UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA

In re:
IRENE MULKERIN,
Debtor.

FILED
**December 27, 2024**
Clerk, U.S. Bankruptcy Court
Middle District of Pennsylvania
Harrisburg

Case No.: 1:24-bk-03264-HWV

Chapter 7

## MOTION FOR RULE 2004 EXAMINATION OF CHAPTER 7 TRUSTEE STEVEN M. CARR

COMES NOW the Debtor, Irene Mulkerin ("Debtor"), by and through this pro se filing, and respectfully moves this Honorable Court for the entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure authorizing the examination of Chapter 7 Trustee Steven M. Carr ("Trustee Carr") under oath, as well as the production of documents related to the administration of this estate and related proceedings. In support thereof, the Debtor states as follows:

### I. JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.
This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).
Venue is proper in this District pursuant to 28 U.S.C. § 1408.

### II. BACKGROUND

The Debtor initially filed a Chapter 7 case on October 25, 2024, under intense financial and legal pressure. This case was dismissed on December 17, 2024, due to the Debtor's failure to file Form 108. The Debtor promptly filed the current Chapter 7 case on December 18, 2024, seeking relief under the Bankruptcy Code's protections and an orderly, transparent administration of her estate for the benefit of creditors and in accordance with the law.

1

Trustee Steven M. Carr was appointed to oversee the Debtor's estate in her original Chapter 7 filing on October 25, 2024, and has been reappointed in the current case. The Debtor has significant concerns regarding the integrity, impartiality, and transparency of Trustee Carr's conduct. This request for a Rule 2004 Examination encompasses both the dismissed case and the current case.

**Key Issues Warranting Rule 2004 Examination:**

1. **Misrepresentation in Court:**
   ◦ Trustee Carr claimed in court that the Debtor failed to provide pay stubs, despite receiving them on November 12, 2024.
   ◦ Trustee Carr falsely attributed the cancellation of the §341(a) meeting to the Debtor's alleged failure to submit documents. In fact, Carr himself canceled the meeting, as evidenced in his email.
   ◦ Trustee Carr's actions and statements appear calculated to portray the Debtor as noncompliant or unfavorable to the Court, undermining her credibility and standing in these proceedings.

2. **Contradictory Statements & Case Handling**
   ◦ On November 11, 2024 meeting with Carr, in response to Debtor's concern regarding the pressure for her to dismiss her bankruptcy case, Carr indicated that he would fight against any such voluntary dismissal.
   ◦ Trustee Carr failed to file a motion or take any action to prevent the Debtor's dismissal after the Debtor failed to file Form 108.
   ◦ Such behaviors indicate Trustee Carr may be compromised by alliances outside maximizing the value of the debtor's estate through proper asset management.

3. **Failure to Address Fraud Allegations:**
   o The Debtor presented evidence of fraud and financial discrepancies in the Papoutsis Family Limited Partnership, including a missing $1.4 million property sale and an unexplained $1.1 million distribution from the FLP, among other troubling anomalies.
   o Trustee Carr disregarded these allegations, in direct violation of his fiduciary duty under 11 U.S.C. § 704. Instead, he negotiated a buyout from an undisclosed buyer for less than 10% of the asset's value (excluding missing profits and likely fraud) and failed to provide the Debtor or the

2

Case 1:24-bk-03264-HWV    Doc 53    Filed 12/27/24    Entered 12/27/24 10:00:35    Desc
Main Document    Page 2 of 9

Court with any details regarding the transaction.
o The Trustee's actions could be seen as a calculation to force the Debtor to relinquish control of her litigation against Wilmington Trust and Andrew Papoutsis, facilitating a settlement that not only significantly undervalues her claims but also fails to account for the full extent of wrongdoing.

4. **Questionable Asset Valuation**
   • **Proposed Sale of the FLP**
   During a meeting on November 11, 2024, Trustee Carr discussed selling the Debtor's FLP interest to satisfy creditors but did not address concerns about undervalued offers for these substantial assets. When the Debtor's husband requested specific details on the process—citing how unfounded the Trustee's confidence appeared—Carr simply stated, "Don't worry, I have very high confidence I can liquidate the FLP."
   • **Dismissive Attitude and Lack of a Clear Plan**
   This vague reassurance offered no substantive plan for soliciting competitive bids or maximizing the FLP's value.
   • **Failure to Maximize Estate Value**
   By not articulating a strategy to fully realize the FLP's worth—an asset tied to substantial real property and cash—Trustee Carr has raised serious doubts about his commitment to his fiduciary duties. Moreover, failing to pursue competitive bidders or explore higher offers has yielded proposals that significantly undervalue the FLP, potentially depriving the estate of millions in recoverable value.

5. **Coordination with Adverse Parties:**

   1. A critical issue warranting examination is the Trustee's handling of multiple significant assets within Irene's estate, particularly the trust litigation/settlement and her interest in the Andrew V. Papoutsis Family Limited Partnership (FLP). Both assets are controlled by Andrew V. Papoutsis and associated parties, including individuals both identified and potentially unknown.

   2. The Debtor informed Carr that Attorneys Robert Chernicoff and Daniel Atlas were pressuring her to dismiss her bankruptcy case by promising that a settlement would be paid within a week, but only

3

after she dismissed the case. They further stated that an offer on the FLP assets would be made only after the dismissal. Carr dismissed these concerns, stating there was "nothing wrong" with these tactics. When the Debtor pressed for clarity on what constituted undue pressure, Carr dismissively responded, "Did they hold a gun to your head?"

3. Trustee Carr's actions appear to align with the interests of adverse parties, such as Wilmington Trust and Andrew Papoutsis, rather than prioritizing the maximization of the estate's value. Two of the Debtor's most significant assets—the trust litigation/settlement and her interest in the Andrew V. Papoutsis Family Limited Partnership (FLP)—are entirely controlled by the same group of individuals, a critical red flag that Trustee Carr has inexplicably overlooked.

4. Instead, his handling of these assets suggests a potential orchestration or tacit endorsement of a settlement strategy that is neither transparent nor in the best interest of the estate. If Trustee Carr is aware of undisclosed agreements, shifting offers, or undue pressure tactics and has failed to investigate or inform this Court, such conduct may constitute a serious breach of his fiduciary duties. Moreover, if he is coordinating with creditors and non-creditors to violate the law, such actions demand immediate investigation and accountability.

---

## III. LEGAL AUTHORITY FOR RULE 2004 EXAMINATION

Federal Rule of Bankruptcy Procedure 2004(a) authorizes the Court to order the examination of any entity upon motion. The scope of such an examination is intentionally broad, extending to "the acts, conduct, or property of the debtor, or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." See In re Wilcher, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985). Courts have consistently emphasized the utility of Rule 2004 in uncovering potential misconduct, investigating financial discrepancies, and evaluating fiduciary conduct to ensure transparent

administration of the bankruptcy estate. See In re GHR Energy Corp., 33 B.R. 451, 453 (Bankr. D. Mass. 1983).

**Purpose and Scope of Rule 2004 Examinations**

The purpose of a Federal Rule of Bankruptcy Procedure 2004 examination is to provide parties in interest, including the debtor, with a mechanism to obtain information critical to the fair and efficient resolution of bankruptcy cases. The scope of such an examination is intentionally broad, extending to "the acts, conduct, or property of the debtor, or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." See In re Wilcher, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985). Courts have emphasized that the breadth of Rule 2004 is designed to facilitate full disclosure and uncover facts necessary for the efficient and fair administration of the bankruptcy estate. See In re GHR Energy Corp., 33 B.R. 451, 453 (Bankr. D. Mass. 1983).

In this case, the requested Rule 2004 examination aims to address significant concerns regarding Trustee Steven M. Carr's compliance with his fiduciary duties under 11 U.S.C. § 704. These include his obligations to investigate malfeasance, maximize the value of the estate for creditors, and evaluate his relationship with those who may be subject to investigation. When questions arise about a trustee's impartiality, conduct, or decision-making, courts have repeatedly held that a Rule 2004 examination is the appropriate mechanism to ensure transparency and accountability. See Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 352-53 (1985); In re French, 145 B.R. 991, 993 (Bankr. D.S.D. 1992).

**Trustee's Fiduciary Obligations and the Need for Transparency**

As a fiduciary, the trustee is obligated to act in the best interests of creditors and the estate, free from conflicts of interest or undue influence. See In re Valley Forge Plaza Assocs., 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990). Allegations of misrepresentation, failure to investigate fraud, undervaluation of assets, and potential collusion with adverse parties warrant a closer examination of Trustee Carr's actions to ensure compliance with his fiduciary duties.

In In re Ecam Publications, Inc., 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991), the court recognized that Rule 2004 is an appropriate tool for examining the trustee's

5

conduct and fiduciary decision-making. Similarly, In re Duratech Indus., Inc. upheld the use of Rule 2004 to uncover irregularities in asset management, including undervalued offers or settlement practices that disadvantage creditors. These principles apply directly to the present motion, where the Debtor has presented credible allegations of Trustee Carr's failure to act in the best interest of the estate. Furthermore, the Debtor believes Trustee Carr is actively coordinating and conspiring with creditors and non-creditors to undermine her interests. This alleged coordination appears aimed at coercing the Debtor into accepting an unfavorable settlement against her will—a highly questionable action that warrants further investigation.

**Examination of Alleged Conflicts of Interest and Misconduct**

Rule 2004 also permits the examination of third parties whose conduct may impact the estate, including attorneys, creditors, or adverse parties involved in negotiations or settlements. See In re Ionosphere Clubs, Inc., 156 B.R. 414, 432 (S.D.N.Y. 1993). Courts have held that allegations of undue influence, collusion, or coordination with adverse parties are particularly suited for investigation under Rule 2004, as such conduct may undermine the integrity of the bankruptcy process. See In re Harmony Holdings, LLC, 393 B.R. 409, 413 (Bankr. D.S.C. 2008).

The Debtor has identified numerous specific instances where Trustee Carr's actions seem to align with the interests of adverse parties, casting serious doubt on his impartiality and his commitment to maximizing the value of the estate. These allegations are sufficient to justify a Rule 2004 examination, as they concern of the trustee's fiduciary obligations and the equitable administration of the bankruptcy estate.

**Judicial Precedent Supporting Rule 2004 Examinations**

Courts have consistently recognized the broad discretion afforded under Rule 2004 to investigate issues affecting the estate. In In re Wilcher, 56 B.R. at 433, the court noted that the examination's scope is deliberately wide, encompassing all matters that may affect the estate's administration or the debtor's fresh start. Similarly, in In re GHR Energy Corp., 33 B.R. at 453, the court stated that Rule 2004 serves as a vital tool to uncover potential fraud, conflicts of interest, or other misconduct that could harm creditors or the estate.

6

The Debtor's allegations of misrepresentation, failure to investigate fraud, undervaluation of assets, and potential collusion fall squarely within the permissible scope of Rule 2004. As such, the requested examination is essential to uphold the integrity of the bankruptcy process and ensure that Trustee Carr's actions align with his fiduciary responsibilities. The Debtor asserts that Trustee Carr lied under oath—a serious breach of trust that cannot be addressed without the intervention of the Court and the justice system, which is now evidently necessary.

---

## IV. REQUESTED SCOPE OF EXAMINATION

The Debtor requests that the Court authorize a Rule 2004 examination of Trustee Carr, including, but not limited to, the following topics:

1. **Communications:**

    1. Trustee Carr's communications with any attorney, creditor, or party in interest regarding the Debtor's estate or related proceedings, including those involving the Debtor's spouse.

2. **Asset Valuation and Liquidation:**

    1. Documentation and rationale for asset valuations and decisions to accept or reject offers.

    2. Efforts made to solicit competitive bids for estate assets.

3. **Fraud Allegations:**
    - Detailed Steps Taken by Trustee Carr to Investigate or Address Allegations
    - Specific actions undertaken by Trustee Carr to investigate or respond to the Debtor's allegations of fraud and financial discrepancies.
    - Steps taken by Trustee Carr to investigate or address the Debtor's allegations of fraud and financial discrepancies.
    - Any communications with any parties regarding these allegations.
    - Any Interactions Trustee Carr has had with the U.S. Trustee's Office in Harrisburg (or other offices).

4. **Settlement Discussions:**

- o Documentation of Trustee Carr's involvement in settlement negotiations, including communications with Attorneys Daniel Atlas, Robert Chernicoff, Eden Bucher, Brent Diefenderfer, or any other attorneys, trusts, or related parties.
- o Disclosure of any instructions, directives, or influence exerted by third parties, including other attorneys or creditors, that may have affected Trustee Carr's decision-making.

5. **Contradictory Statements and Case Handling:**

    1. Explanations for statements made by Trustee Carr in open court that are contradicted by documentary evidence (e.g., pay stubs, excused appearances for §341 meetings).

    2. Explanation for failing to file a motion to prevent case dismissal when the Debtor missed filing Form 108.

## V. NO UNDUE PREJUDICE

A Rule 2004 examination imposes no undue prejudice on any party. Instead, it ensures transparency and promotes confidence in the bankruptcy process. If Trustee Carr's actions have been proper, this examination will confirm his compliance with fiduciary duties. If misconduct is revealed, addressing it is essential to uphold the integrity of these proceedings and to ensure that justice is served.

## VI. RELIEF REQUESTED

WHEREFORE, the Debtor respectfully requests that this Honorable Court enter an order:

A. Authorizing a Rule 2004 examination of Trustee Steven M. Carr;
B. Requiring Trustee Carr to appear under oath and produce all requested documents, along with a detailed and thorough written explanation of his actions.
C. Allowing the Debtor to submit a list of examination topics and document

8

Case 1:24-bk-03264-HWV    Doc 53    Filed 12/27/24    Entered 12/27/24 10:00:35    Desc
Main Document    Page 8 of 9

requests in advance; and

D. Granting such other and further relief as this Court deems just and proper.

---

**Respectfully submitted,**
/s/ Irene Mulkerin
**Irene Mulkerin, Debtor**
1740 Adeline Drive
Mechanicsburg, PA 17050
Dated: December 27, 2024