# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

In re:
IRENE MULKERIN,
Debtor (Pro Se).

_____

Case No.: 1:24-bk-03264-HWV
Chapter 7

## DEBTOR'S FIRST SET OF INTERROGATORIES DIRECTED TO WEST SHORE COUNTRY CLUB

TO:
West Shore Country Club
c/o Counsel: Robert W. Pontz, Esq.
Saxton & Stump, LLC
280 Granite Run Drive, Suite 300
Lancaster, PA 17601

FROM:
Debtor, Irene Mulkerin (Pro Se)

Debtor, appearing pro se, hereby propounds the following Interrogatories to West Shore Country Club ("WSCC") to be answered under oath within thirty (30) days of service, pursuant to Federal Rules of Bankruptcy Procedure 9014 and 7026–7037 (incorporating Federal Rules of Civil Procedure 26–37). Failure to provide full, complete, and timely responses may result in motions to compel, sanctions, or adverse inferences against WSCC.

## I. DEFINITIONS & INSTRUCTIONS

1. "You," "Your," or "WSCC" means West Shore Country Club, including its officers, board members, employees, attorneys, agents, affiliates, or anyone acting on its behalf.

1

2. "Debtor" or "I" means Irene Mulkerin, the Chapter 7 debtor in this proceeding.

3. "Documents" includes all writings, emails, letters, billing records, membership agreements, internal policies, board minutes, text messages, or other records in Your possession, custody, or control, in any format.

4. "Communication" means any written or oral exchange of information, including emails, text messages, letters, phone calls, voicemails, in-person or virtual meetings, or other data transmissions.

5. "Claim" refers to Your Proof of Claim No. 2 in this bankruptcy, plus any amendments, supplements, or related charges You have asserted or intend to assert.

6. Relevant Timeframe: Unless otherwise stated, these Interrogatories seek information from January 1, 2021, to the present. If events or knowledge outside that window are relevant, please include them.

7. Continuing Duty: These Interrogatories are continuing in nature. If additional responsive information becomes known after You serve Your answers, You must promptly supplement or amend those answers.

8. Form & Objections:
    - Answer each Interrogatory separately and fully under oath.
    - Identify individuals and documents supporting each answer.
    - State each objection clearly, with the legal basis for it.
    - Provide a privilege log if You withhold any information or documents on grounds of privilege.

## II. INTERROGATORIES

**Interrogatory No. 1:**

2

State the date on which you became aware that the Defendant had filed for bankruptcy protection on October 24, 2024, including the method and source of this information.

In addition, identify all dates on which you assessed new charges, fees, interest, or penalties to the Defendant's account after October 24, 2024, and explain the basis and authority under which each such charge was imposed in light of the bankruptcy filing and the automatic stay.

If you assert that you were unaware of the automatic stay at any time, explain how and when you first became aware of it and describe any steps you took to halt collection efforts or modify the claimed debt as a result.

**Interrogatory No. 2:** Basis for Charges and Itemization of Proof of Claim No. 2

Identify and fully describe in detail the basis, legal justification, and factual support for Proof of Claim No. 2, filed against Debtor Irene Mulkerin, including:

- The specific contractual provisions or bylaws upon which WSCC relies to substantiate the amounts claimed.

  - The principal balance as of October 31, 2023, the date of the family Halloween party, which was the last instance of club use by the Debtor or her family.
  - If You contend the Debtor used facilities past this date, please provide evidence of that.
  - Any membership agreements, terms, and conditions that explicitly govern dues, late fees, finance charges, and penalties.
  - Any modifications to membership terms made after initial enrollment and who authorized them.
  - All internal discussions or board deliberations regarding Debtor's account, including whether any relief, waivers, or modifications were considered.

**Interrogatory No. 3:** Explain why an additional claim or lawsuit was filed in Cumberland County on or around November 8, 2024, after the Defendant's bankruptcy petition was filed.

3

**Interrogatory No. 4:** State the total amount of legal fees, court costs, collection agency fees, and any other expenses incurred by you in connection with the collection or litigation of Defendant's account, including all amounts incurred prior to and during the course of this bankruptcy proceeding.

This request is made for the purpose of evaluating the proportionality and reasonableness of your enforcement actions in light of the size of the underlying debt.

If you contend that any of these costs are recoverable from the Defendant, explain the legal or contractual basis for that claim.

**Interrogatory No. 5:** Identify all internal procedures and notifications the club follows before transferring an account to collections or initiating legal action for unpaid dues.

**Interrogatory No. 6:** Describe the club's "Young Professional" membership policy currently and in 2017, including eligibility criteria, reduced rates or dues, and the reasoning behind offering such policies.

**Interrogatory No. 7:** Identify any communications between the club and the Defendant recommending that the membership be placed in the Defendant's name rather than her spouse's, including the basis for such a recommendation.

**Interrogatory No. 8:** State whether the club considered or documented the source of payment for the Defendant's membership dues, specifically payments made by her spouse's employer, and how this affected the assignment of financial responsibility.

**Interrogatory No. 9:** State whether it is the club's policy or practice to continue charging interest, late fees, or any other form of penalties on unpaid balances after a member's account has been referred to collections or legal action has been initiated. If so, describe in detail the basis for this policy, including the authority under the club's bylaws or membership agreement that permits such charges, and specify whether such charges continue to accrue after a member is no longer active or in good standing.

**Interrogatory No. 10:** Identify the date, reason, and decision-making individuals involved in the temporary suspension of Andrew (Andy) Mulkerin from the club,

4

including all communications and documents concerning the alleged incident and the basis for the length of suspension.

**Interrogatory No. 11:** Describe any other disciplinary actions taken by the club against members within the past five years, including the nature of the incident and the penalties imposed if no penalties imposed for incident, describe reason.

**Interrogatory No. 12:** State whether the club maintains records or logs of member conduct violations and disciplinary actions. If so, identify the custodian of those records and the process by which disciplinary decisions are made and recorded.

**Interrogatory No. 13:** State whether it is common practice for the club to recommend placing memberships under the name of the younger spouse or partner to take advantage of the "Young Professional" membership rate, and if so, explain the basis and frequency of this practice.

**Interrogatory No. 14:** Identify whether the club was aware at the time of the Defendant's application that she was a stay-at-home parent, and that her spouse, Andy Mulkerin, was the General Manager of York Sheet Metal, as indicated on the membership application and communicated directly.

**Interrogatory No. 15:** State when and how you first became aware of any financial hardship affecting the Defendant or her spouse, including knowledge of bankruptcy, inability to pay dues, or other relevant financial difficulties. Describe any internal discussions, communications, or decisions regarding whether to waive, reduce, or adjust the Defendant's dues, fees, or penalties in response to such hardship.

If no such discussions or considerations occurred, explain why not.

**Interrogatory No. 16:** State whether you consulted with any attorney or legal professional prior to assessing charges, filing Claim No. 2, or taking any post-petition action against the Defendant after October 24, 2024. If so, identify the attorney or firm consulted, the general nature of the advice received (without disclosing privileged content), and how that advice was applied or relied upon in deciding to continue collection or legal action.

**Interrogatory No. 17:** Identify and describe all communications, meetings, and coordination efforts—oral or written—between You (including your board

members, employees, agents, or legal representatives) and any third parties concerning the initiation or continuation of legal action against the Debtor or her husband, both before and after her October 24, 2024 bankruptcy filing. This includes, but is not limited to:

**a.** Any discussions with or recommendations You received from WSCC board members, financial personnel, or legal counsel concerning the strategy, advisability, or timing of filing the initial suit in May 2024, second claim in November 2024 or Claim No. 2 in December 2024;

**b.** Any contact, coordination or communications with any third-parties regarding the Defendant, her spouse Andy Mulkerin, or the claim's enforcement.

**c.** If you deny any external coordination, affirm no records or communications exist.

**Interrogatory No. 18:** Describe all internal and external communications made by you, your representatives, or your agents concerning the Defendant's membership status, overdue balances, resignation, cancellation, or termination from January 1, 2021, to the present. For each communication, identify:

- The date of the communication;
- The method (e.g., email, phone call, in-person, letter);
- All parties involved, including their titles or roles;
- The general nature and content of the communication; and
- Any decisions, actions, or follow-up taken as a result of the communication.

**Interrogatory No. 19:** Describe all instances within the last five years in which West Shore Country Club has waived, reduced, or forgiven membership dues, late fees, penalties, or other charges for members citing financial hardship or bankruptcy. For each instance, state the general circumstances and the decision-making process used to determine whether to grant relief.

**Interrogatory No. 20:** State the basis on which you declined or refused to provide the Defendant with a copy of the club's bylaws upon her request on or around December 29, 2024. Include any internal communications or policies that governed that decision, and identify who made or approved the refusal.

6

**Interrogatory No. 21:** State whether any individual, entity, board member, or external party influenced, encouraged, or pressured you to pursue legal or collection action against the Defendant with respect to this debt. If so, identify the person(s) or entities involved, the nature of the communication, and any role they played in the decision-making process.

If you contend that this enforcement action was routine or standard procedure, explain why similar efforts have not been taken in other small-balance cases.

**Interrogatory No. 22:** Identify all board meetings, finance committee meetings, disciplinary meetings, or any other formal or informal internal meetings held by West Shore Country Club from January 1, 2021, to the present at which the Defendant's account, payment history, membership status, or potential legal action was discussed. For each meeting, state:

- The date and location of the meeting;
- The names and roles of all attendees;
- Whether minutes, notes, or agendas exist referencing the Defendant's account;
- The substance of any discussions about the Defendant's account;
- All decisions made regarding the Defendant's account at or as a result of the meeting;
- The rationale provided or discussed in support of any such decision.

**Interrogatory No. 23:** Identify and describe all communications between You and Trustee Stephen Carr, or any member of his office, in connection with the Defendant's current bankruptcy case and any prior dismissed bankruptcy cases. For each communication, state:

- The date and method of the communication;
- The individuals involved on both sides;
- The subject matter discussed, including any references to the Defendant's account, claim, membership status, or potential resolution;

7

Case 1:24-bk-03264-HWV    Doc 355-1    Filed 05/08/25    Entered 05/08/25 13:23:38    Desc  Exhibit A    Page 8 of 11

- Whether Trustee Carr or his office provided any instructions, requests, or recommendations regarding the handling of the Defendant's claim or account;
- Whether West Shore Country Club followed or declined to follow those recommendations, and if declined, the reason why.

**Defendant's First Set of Requests for Production to Plaintiff**

**Request for Production No. 1:** Produce all documents supporting the amounts claimed in Proof of Claim No. 2, including but not limited to membership agreements, amendments, fee schedules, dues statements, invoices, late fee policies, and financial records showing the computation of amounts due.

**Request for Production No. 2:** Produce all documents reflecting any charges, fees, interest, or penalties applied to Defendant's account after October 24, 2024, including internal approval, basis under bylaws or membership agreement, and any communications relating to those charges.

**Request for Production No. 3:** Produce all internal and external communications, including emails and correspondence, relating to the Defendant's bankruptcy filings.

**Request for Production No. 4:** Produce any and all legal invoices, billing statements, contracts with legal counsel or collections firms, or expense reports documenting costs incurred in pursuing the Defendant's debt.

**Request for Production No. 5:** Produce the club's bylaws and any amendments in effect from June 1, 2017, to present.

**Request for Production No. 6:** Produce all policies, memos, or documentation outlining the application and calculation of late fees, finance charges, or penalties on member accounts.

**Request for Production No. 7:** Produce all communications and internal notes or memos relating to Defendant's application for membership, including any recommendation or rationale for placing the membership in the Defendant's name rather than her spouse's.

**Request for Production No. 8:** Produce documents showing the source(s) of payment of Defendant's dues or charges, including any identification of third-party payors or payments made by York Sheet Metal.

**Request for Production No. 9:** Produce any communications, documents, notes, or board or committee minutes referring to financial hardship, dues waivers, account adjustments, or termination of Defendant's membership.

**Request for Production No. 10:** Produce all records of disciplinary actions taken against club members from January 1, 2019, to present, including incident reports, penalties imposed, and decision-maker identities.

**Request for Production No. 11:** Produce documents reflecting any internal policies or board practices regarding placing memberships in the name of a younger spouse or partner to qualify for reduced rates.

**Request for Production No. 12:** Produce all meeting minutes, agendas, board packets, or internal notes from board or committee meetings from January 1, 2021, to present in which Defendant's account or membership was discussed.

**Request for Production No. 13:** Produce all communications between West Shore Country Club and Trustee Stephen Carr or his office relating to Defendant's current or prior bankruptcy filings, claim status, or suggested resolutions.

**Request for Production No. 14:** Produce all records or summaries documenting instances in which member dues, fees, or penalties were reduced, forgiven, or adjusted based on financial hardship or other member circumstances from 2019 to present.

**Request for Production No. 15:** Produce all correspondence sent to or from Defendant from January 1, 2021, to present regarding her resignation, membership status, balance owed, or cancellation of membership.

**Request for Production No. 16:** Produce all records relating to decisions or discussions to refuse Defendant's request for a copy of the bylaws on or about December 29, 2024, including who made the decision and on what basis.

**Request for Production No. 17:** Produce any documents, emails, or meeting notes showing discussions of strategy, justification, or rationale for pursuing collection

9

or legal action against Defendant, including any influence or involvement of outside individuals or organizations.