UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:

IRENE MULKERIN, Debtor

Chapter 7

Case No. 1:24-bk-03264-HWV

FILED
**July 14, 2025**
Clerk, U.S. Bankruptcy Court
Middle District of Pennsylvania
Wilkes-Barre

Debtor'S MOTION UNDER RULE 2004 TO COMPEL DOCUMENT PRODUCTION AND TO TOLL OR CLARIFY CONTRACTUAL 120-DAY LIMITATIONS PERIOD SET FORTH IN SETTLEMENT AGREEMENT

NOW COMES the Debtor, Irene Mulkerin, appearing pro se, and pursuant to Fed. R. Bankr. P. 2004 and Local Bankruptcy Rule 2004-1, respectfully moves this Court for an Order (1) compelling the production of specific trust and settlement-related documents from all known custodians of record, and (2) tolling or clarifying the commencement of the 120-day contractual limitations period set forth in the Settlement Agreement, until such time as the requested documents have been produced in full and the Debtor has been afforded no fewer than 120 days to review and respond. In support thereof, the Debtor states:

**I. Background**

1. On June 3, 2025, the Court approved a settlement under which the A.V. Papoutsis Irrevocable Trust agreed to pay $3.15 million to the estate in exchange for estate-held litigation claims originally filed by the Debtor in the Delaware Court of Chancery.

2. The Court approved the settlement on a final basis after accepting representations by Trustee Carr and Special Counsel Atlas that the compromise was fair, reasonable, and supported by material fiduciary documents—including trust instruments, valuations, escrow terms, and governance authority. In his opinion and related order, the Court specifically stated that the executed agreement must "incorporate the representations and warranties described by the Trustee and Attorney Atlas to protect the estate against material misrepresentation." (ECF No. 410, ¶ 4(b)).

3. The Settlement Agreement includes a contractual 120-day limitations period for asserting any challenge to the validity, enforceability, or underlying circumstances of the settlement—including claims for fraud, misrepresentation, undue influence, or lack of authority. However, the governance documents and financial materials relied upon to justify the settlement have never been disclosed to the Debtor, despite her repeated formal and informal requests.

4. The Debtor first requested them from WTC as early as April 2023 and renewed those requests repeatedly prior and throughout her Delaware litigation, and during her previous and current bankruptcy cases. The Trustee and fiduciaries were fully aware of these requests and failed to produce the materials.

5. The start date of this 120-day period is not clearly defined, but it may be interpreted to have commenced on June 3, 2025, the date

the Court approved the compromise, thereby placing the Debtor at risk of procedural prejudice if not clarified or tolled.

6. In a June 30, 2025 email, Trustee Carr conflated the 120-day contractual limitations period in the Settlement Agreement with the general claims deadline under the Bankruptcy Code—either reflecting a fundamental misunderstanding of the applicable terms or a strategic attempt to mischaracterize their effect—underscoring the urgent need for judicial clarification to prevent prejudice to the Debtor. (See Exhibit A for complete email chain between Debtor and attorneys Robert Chernicoff, Stephen Brauerman, Don Kornfield, Bradley Leber and Trustee Steven Carr, in which requests for the underlying documents were made and refused.)

**II. Prior Request and Refusal**

7. On July 7, 2025, Debtor filed a formal Request for Clarification detailing her most recent and repeated efforts to obtain trust governance documents used in the settlement. That filing included:

    ◦ A written chronology of Debtor's repeated inquiries for these records;

    ◦ Documented refusals from attorneys Stephen Brauerman, Robert Chernicoff, and the support of those positions by Trustee Steven Carr. (See Exhibit A, incorporated herein.)

8. To date, none of the requested documents have been produced, including:

    ◦ The executed escrow or loan agreements that are funding the $3.15M payment;

    ◦ All versions of Schedule A to the A.V. Papoutsis Irrevocable Trust;

    ◦ All trust amendments, including the First Amendment;

    ◦ All appointment/removal documents for fiduciaries of the Trust;

    ◦ Any consents, directions, or voting records from the Trust Protector, Distribution Advisor, or Wilmington Trust.

**III. Legal Basis for Relief**

1. Rule 2004 permits examination of "the acts, conduct, or property or to the liabilities and financial condition of the Debtor, or to any matter which may affect the administration of the Debtor's estate." (Fed. R. Bankr. P. 2004(b)).

2. This request is also supported by 11 U.S.C. § 542(e), which requires any entity in possession of recorded information related to the Debtor's property or financial affairs to surrender it for estate administration.

3. Debtor is a statutory surplus Debtor under 11 U.S.C. § 726(a)(6), with a legal right to monitor the estate's closure and to challenge

any procedural or fiduciary irregularities affecting her economic interests.

4. The requested documents are material to the Court-approved compromise because:

- The Trustee and Special Counsel represented that key fiduciary documents—such as trust instruments, Schedule A, amendments, valuations, and escrow agreements—supported the fairness and enforceability of the settlement, but admitted they did not review several of those materials and repeatedly dismissed the Debtor's requests for them as immaterial or unnecessary. Their decision to proceed without confirming the actual contents or authority reflected in those documents underscores the need for post-settlement access to ensure the integrity of the compromise and protect the Debtor's rights under Rule 60(b)(3) and Section 10;

- They bear directly on the Trust's internal governance, the authority of its fiduciaries to approve the settlement, and the use of Trust assets to satisfy the estate's compromise;

- They may establish whether key parties misrepresented or concealed material facts about the value of the Trust, its ownership, or the legal ability to bind it to the settlement;

- Their concealment prevents the Debtor from evaluating potential fraud, fiduciary misconduct, or other grounds for relief under Rule 60(b)(3);

5. The parties reasonably believed to possess or control these materials include, without limitation:
   - The A.V. Papoutsis Irrevocable Trust, represented by attorney Robert E. Chernicoff, Esq. including materials held by its current trustee Don Kornfield, Esq. and distribution advisor Bradley Leber, Esq.;
   - Wilmington Trust Company, the original trustee of the A.V. Papoutsis Irrevocable Trust from its inception in 2012 until its resignation in 2024; current represented by Stephen Brauerman, Esq. counsel to Wilmington Trust in connection with this Trust and the negotiated settlement;
   - Matt D'Emilio, Esq. and Daniel Hayward, Esq., in their respective roles as counsel for Don Kornfield, Esq. (Trustee) and Bradley Leber, Esq. (Distribution Advisor), each of whom was retained specifically in connection with the 2025 settlement negotiations and execution;
   - McGregor Brilhart, Esq. and Alex Snyder, Esq. in their former fiduciary capacities as Trust Protector and/or Distribution Advisor, to the extent they possess or retain documents they executed, relied on, or transmitted during their appointments;

- Any known custodian or attorney involved in the review, transmission, or execution of trust governance documents relied upon during settlement negotiations or funding.

6. Failure to produce these records undermines the integrity of estate administration and compromises Debtor's ability to preserve post-distribution remedies under Fed. R. Civ. P. 60(b)(3) if fraud, misrepresentation, or misconduct is later shown.

**IV. Request to Toll or Clarify 120-Day Claims Bar**

7. The Settlement Agreement includes a contractual 120-day limitations period that applies to any claim or cause of action arising out of or relating to the settlement itself, including allegations that it was procured through fraud, misrepresentation, undue influence, or lack of fiduciary authority.

8. The Debtor cannot meaningfully evaluate whether to assert such a claim—or seek relief under Fed. R. Civ. P. 60(b)(3)—without first reviewing the governance documents, fiduciary consents, valuations, and other materials relied upon to support the settlement.

9. Accordingly, the Debtor respectfully requests that the Court declare:

   1. That the 120-day contractual limitations period set forth in Section 10 of the Settlement Agreement has not yet commenced, because

the documents necessary to evaluate any such claim have not been produced;

2. That, upon full production of the documents described in Section 2 of this Motion, the Debtor shall be afforded the full 120 days from the date of production to review and, if warranted, assert any claim falling within the scope of Section 10; and

3. In the alternative, if the documents are not produced within ten (10) days of entry of an order compelling production, the 120-day period shall begin to run from the date of such order, and the Debtor shall be afforded no fewer than 120 days from the later of (a) the production date or (b) the order date, whichever affords her more time to evaluate and assert claims.

10. This motion does not seek a ruling on the merits of any such claim, but merely seeks to preserve the Debtor's procedural right to assert such a claim, if warranted, after full disclosure.

**V. Relief Requested**

WHEREFORE, the Debtor respectfully requests that the Court:

1. Authorize Rule 2004 production of the documents described in Section II above;

2. Direct that such documents be produced within 10 days of the entry of an Order;

3. If any responsive document cannot be produced, the responding party must submit a declaration under penalty of perjury identifying the document, its last known custodian, the reason for its unavailability, and all efforts made to locate it.

3. Declare that the 120-day limitations period under the Settlement Agreement shall not begin to run unless and until (a) this Court grants the present motion and (b) the requested documents have been produced in full, and that in any event, the Debtor shall be afforded no less than 120 days from the later of those two events to evaluate and, if warranted, assert any claim falling within the scope of Section 10 of the Settlement Agreement.

4. Grant such other relief as the Court deems just and proper.

Dated: July 14, 2025
Respectfully submitted,
/s/ Irene Mulkerin
Pro Se Debtor
1740 Adeline Drive
Mechanicsburg, PA 17050