UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:

IRENE MULKERIN, Debtor

Chapter 7

Case No. 1:24-bk-03264-HWV

FILED
**July 22, 2025**
Clerk, U.S. Bankruptcy Court
Middle District of Pennsylvania
Harrisburg

SUPPLEMENTAL STATEMENT IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF FLP TAX AND FINANCIAL RECORDS

Irene Mulkerin, Debtor and pro se party, respectfully submits this Supplemental Statement in support of her pending Motion to Compel Production of FLP Tax and Financial Records [Dkt. 463], and in further response to the FLP's objection [Dkt. 513], to clarify the full scope and legal basis for her request.

I. Scope of Relief Sought: Records from Inception (2009–2024)

The Papoutsis Family Limited Partnership ("FLP") was formed in 2009. I am a one-third limited partner. I now respectfully request that the Court compel the production of the complete tax and financial records of the FLP from 2009 through 2024, including but not limited to:

- Federal and state tax returns (Forms 1065 and all schedules),
- Schedules K-1 issued to all partners,
- General ledgers, capital account summaries, balance sheets,
- Records of receipts, disbursements, and distributions,
- Documentation of financing, loan agreements, and depreciation schedules. Full fixed asset/depreciation schedule (original Form 4562 detail)
- Rent rolls for 2009–2024
- Partnership agreement (esp. re: related-party transfers, valuation, distributions)
- Form 4797 or Schedule D, if they ever sold properties

- Bank Statements

This information is necessary not only to file lawful tax returns under 11 U.S.C. § 521 and 26 U.S.C. § 6012, but also to verify whether distributions and allocations reported to me — and to the IRS — are accurate and legally supportable.

II. Legal Basis for Full Historical Production

1. The Partnership Agreement Gives Me a Contractual Right to All Records.
   Article XIV of the FLP Agreement entitles each limited partner to inspect and copy the partnership's tax returns, financial reports, capital accounts, and disbursement records. There is no time limitation in that clause. This right is enforceable under case law.
   *See* Durrett v. Herring Nat'l Bank, No. A-06-CA-270 LY, 2007 WL 647592, at *4 (W.D. Tex. Feb. 27, 2007) (enforcing inspection rights where "relevant to the partner's interest and timely requested").

2. The Records Are Necessary for Tax Compliance and Bankruptcy Disclosure.
   I am being compelled by the IRS and Chapter 7 Trustee to file overdue tax returns. However, the IRS is asserting a priority claim of over $159,000 based on estimated liabilities. I have paid tax on over $500,000 in income from the FLP since 2015, despite receiving only one $4,000 distribution. Submitting returns based on knowingly incomplete or inaccurate K-1s would expose me to penalties under 26 U.S.C. § 7206(1).
   *See also* In re Symington, 209 B.R. 678, 688 (Bankr. D. Md. 1997) ("The duty of a debtor to cooperate with the trustee and provide necessary information is central to the functioning of the bankruptcy system").

3. The Records Inform Ongoing Allegations of Fraud and Misreporting.

   ○ From 2019 to 2021, over $1.5 million in distributions were reported, but I received none.

   ○ The buildings were fully leased by APX companies, yet net rental income swings erratically— from $403,000 to negative $42,000 — suggesting internal manipulation.

- Between year-end 2021 and beginning 2022, over $2 million in new debt appeared, and a $2 million valuation drop was applied to building assets. These changes occurred during the FLP's transition from Showalter and Miller, CPA to the local accounting firm RKL, raising concerns that certain accounting entries may have been altered or backdated during the process.

Because capital accounts are cumulative, I must examine prior-year allocations and entries to evaluate the legitimacy of any reported phantom income or disguised distributions. The IRS itself permits access to tax records under 26 C.F.R. § 301.6103(e)-1, and courts allow discovery of records "from inception" when past conduct affects present rights.

III. Objection by the FLP Is Legally Unsupported

The FLP asserts that I do not need access to records because they issued K-1s. But a K-1 is not self-authenticating. Taxpayers are required to verify and ensure accuracy before filing returns under penalty of perjury. A K-1 is not sufficient for compliance where it appears inconsistent with known facts.

Moreover, the FLP's argument that I must wait until the Trustee formally "abandons" the FLP interest is mistaken. I am not seeking to manage the FLP or assert control — only to exercise a limited partner's inspection right and meet my personal tax duties, which persist regardless of abandonment.

IV. Relief Requested

Accordingly, I respectfully ask the Court to:

1. Grant the Motion to Compel Production of Tax and Financial Records [Dkt. 463];

2. Direct the General Partner, the FLP, its accountants—including Ray Miller and Linden Showalter—as well as RKL's Lynn Rotz and any current fiduciaries, to produce the following for the years 2009 through 2024:Federal and state tax returns (Forms 1065 and all schedules),

    - Schedules K-1 issued to all partners,

- General ledgers, capital account summaries, balance sheets,

- Records of receipts, disbursements, and distributions,

- Documentation of financing, loan agreements, and depreciation schedules.
  Full fixed asset/depreciation schedule (original Form 4562 detail)

- Rent rolls for 2009–2024

- Partnership agreement (esp. re: related-party transfers, valuation, distributions)

- Form 4797 or Schedule D, if they ever sold properties

- Bank Statements

3. Order production within ten (10) days to allow me to complete tax filings and evaluate whether the estate has additional rights to pursue;

4. Grant such other relief as is just and appropriate.

Respectfully submitted,
Dated: July 21, 2025
/s/ Irene Mulkerin
Irene Mulkerin, Debtor (Pro Se)