UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA

FILED
**August 4, 2025**
Clerk, U.S. Bankruptcy Court
Middle District of Pennsylvania
Wilkes-Barre

In re: IRENE MULKERIN, Debtor

Case No. 1:24-bk-03264-HWV

Chapter 13 (conversion pending)

**DEBTOR'S OBJECTION TO TRUSTEE'S PROPOSED ABANDONMENT OF THE PAPOUTSIS FAMILY LIMITED PARTNERSHIP (FLP)**

NOW COMES the Debtor, Irene Mulkerin, pro se, and respectfully objects to any proposed or pending abandonment of the Papoutsis Family Limited Partnership ("FLP") by the Chapter 7 Trustee, and in support thereof states as follows:

**I. Procedural Posture and Standing**

1. The undersigned Debtor filed a Notice of Conversion to Chapter 13 on August 1, 2025, which the Court has scheduled for hearing on August 26, 2025.

2. As of the date of this filing, the Chapter 7 Trustee has not administered or liquidated the FLP interest and seeks to abandon it.

3. Debtor is a 32% limited partner in the FLP and has presented substantial evidence that the estate's interest in the FLP may be worth over $3 million.

4. Debtor objects to abandonment because the FLP is neither burdensome to the estate nor of inconsequential value. See 11 U.S.C. § 554(a), (b).

5. On June 3, 2025, the Court approved the Trustee's motion to compromise estate claims against the A.V. Papoutsis Irrevocable Trust. The settlement has since been funded, and the 120-day claims bar is currently in effect.

6. Although the compromise resolved certain trust-related claims, overlapping and interdependent claims involving the Papoutsis Family Limited Partnership ("FLP") remain unlitigated. Abandonment of the FLP would impair the estate's ability to investigate and pursue those interconnected claims—frustrating both the administration of the estate and the Debtor's ability to litigate under Chapter 13.

**II. Substantial Value and Open Financial Questions Regarding the FLP**

7. The Papoutsis Family Limited Partnership ("FLP") holds demonstrable value to the estate and warrants further investigation. Public records and historical financials show that the FLP owns three industrial buildings which, according to June 2023 appraisals[1], have a combined market value exceeding $8 million[2]. As of 2020, these properties were owned outright—unencumbered by any mortgage or financing.

8. The three industrial buildings are all fully leased to APX operating companies (some of which are owned by the Trust) and have remained occupied fully since at least 2011. Despite this, gross income has never been reported and net rental income reported had swung drastically (e.g. from $403,000 to $-42,000) suggesting internal financial manipulation.

9. Beginning in 2021, the FLP's financial statements show the abrupt appearance of over $2 million in new debt, coinciding with a parallel and unexplained reduction in reported real estate asset values on the partnership's tax returns. This timing aligns with the acquisition and subsequent sale of 225 Hanover Road—purchased by the FLP in 2019 and

---

[1] Appraisals were provided to Trustee Carr on/around November 11, 2024 and were submitted to court as evidence by Debtor in Motion to Compromise Claim.

[2] The FLP also owns a residential duplex residential property (W. Main Street, Waynesboro, PA 17268) which has never appeared on any K-1 or partnership return.

sold in 2022. The disposal of this asset appears to have served as a vehicle to restructure and obscure the FLP's balance sheet. The transaction's timing suggests it may have been used to mask improper re-characterization of capital, conceal unreported distributions, or facilitate backdated accounting entries. These structural changes, layered over the FLP's longstanding pattern of reporting phantom income without corresponding distributions, indicate deliberate efforts to distort the partnership's financial profile—making abandonment of this asset, without *any* investigation, manifestly inappropriate. This transactional timing and re-characterization activity align with the same patterns of concealment already documented in the trust-related proceedings.

10. Notably, the 2024 K-1 issued to Debtor in February 2025 shows both recourse and non-recourse financing against the FLP's assets, suggesting that the FLP has not only pledged its real estate but may also be functioning as a collateral source or guarantor for business obligations of affiliated entities, including the APX operating companies.

11. These transactions appear to lack arms-length documentation and have not been explained or investigated by the Trustee. If the FLP's assets are being leveraged for external business obligations without commensurate value returned to the FLP, this would constitute a breach of fiduciary duty and improper dilution of the estate's interest.

12. This raises two key legal implications:

13. The FLP's financials are integrally tied to those of the A.V. Papoutsis Irrevocable Trust and APX businesses, implicating the same actors, financial flows, and potential misconduct addressed in the recently-settled trust claims.

3 of 7

Case 1:24-bk-03264-HWV    Doc 541    Filed 08/04/25    Entered 08/04/25 12:38:56    Desc
Main Document    Page 3 of 7

14. Any abandonment at this juncture would effectively cut off meaningful Rule 2004 examination, third-party subpoenas, and forensic accounting necessary to trace value and correct potential capital account misreporting or asset diversion.

15. In previous filings, Debtor has also presented evidence of potential IRC § 704(b) violations and improper capital allocation. For example, K-1s from 2016–2024 show over $500,000 in phantom income reported to Debtor with only $4,000 in distributions.

16. The Trustee has not conducted any independent valuation, investigation, or Rule 2004 examination of the FLP, despite repeated requests.

17. In short, abandonment would frustrate the Debtor's rights under § 554(b), prevent creditor recovery, and preclude the Court from understanding the full value of this estate asset.

18. Preserving the FLP interest ensures that both the estate and the Debtor can evaluate claims that may materially increase the value of the estate and support a feasible Chapter 13 plan.

### III. Legal Basis to Deny Abandonment

19. Under § 554(a), a trustee may abandon estate property only if it is (1) burdensome or (2) of inconsequential value and benefit to the estate.

20. Courts routinely deny abandonment where the estate retains potential claims or recoverable value. See: *In re K.C. Mach. & Tool Co.*, 816 F.2d 238, 246 (6th Cir. 1987) ("Where property has not been adequately evaluated or investigated, abandonment is premature.") I*n re Johnston*, 49 F.3d 538, 540 (9th Cir. 1995) ("A debtor's objection requires the trustee to show that abandonment is justified under § 554.")

21. The present case exemplifies precisely the concerns raised in K.C. Mach. and Johnston. The Trustee has not conducted any independent appraisal, forensic accounting, or document review regarding the Papoutsis Family Limited Partnership ("FLP"). Yet the FLP holds three industrial buildings—fully leased and cumulatively appraised at over $8 million, based on evidence provided to Trustee Carr prior to his filing of Compromise to Claim and introduced during the March 27 & April 3, 2025 hearing. As of 2020, all properties were owned outright. However, by 2021, more than $2 million in debt inexplicably appeared on the FLP's books, coinciding with a $2 million drop in reported asset values. These changes followed a switch in accounting firms and raise serious concerns about capital account manipulation, undisclosed distributions, and asset diversion.

22. Furthermore, the 2024 K-1 issued to Debtor reflects both recourse and non-recourse liabilities, suggesting the FLP is being used as collateral for loans benefiting affiliated entities, including APX operating companies—without documentation of fair consideration or arms-length transactions. These unexplained financial developments overlap with the same accounting systems, fiduciaries, and asset pools involved in the recently settled trust litigation. Abandoning the FLP now would not only obstruct essential discovery but could permanently shield potential claims from judicial review. Accordingly, under the controlling precedents of Johnston and K.C. Mach., abandonment would be premature and unjustified.

23. In addition to its raw financial value, the FLP holds evidentiary and strategic importance in connection with the estate's compromise of trust-related claims. The trust settlement was premised in part on valuations and accounting records that overlap with FLP financials, including shared business entities, tax reporting practices, and fiduciary conduct. Abandoning the FLP would block essential discovery and compromise the estate's ability

to identify improper transfers, correct valuations, or recover diverted income—matters directly relevant to asset recovery and creditor interests.

24. Here, no meaningful valuation, audit, or document review has occurred. The Trustee cannot carry his burden to show abandonment is justified.

**IV. Conversion Motion Pending**

25. Debtor's motion to convert to Chapter 13 remains pending.

26. Premature abandonment would frustrate both the estate's interests and the Debtor's ability to administer her own plan under Chapter 13.

27. If the FLP is abandoned now, Debtor will be denied a meaningful opportunity to preserve or investigate claims that directly impact the confirmed compromise and Chapter 13 administration.

**V. Preservation of Related Claims and Evidence**

The compromise of estate claims against the Trust did not—and could not—resolve claims implicating the Papoutsis Family Limited Partnership. Abandoning the FLP would functionally shield overlapping conduct from judicial review and disrupt access to business records necessary to evaluate capital account manipulation, phantom income, concealed distributions, and valuation suppression. Because the Trustee has not conducted discovery, obtained tax documents, or subpoenaed underlying ledgers or bank records, abandonment at this stage is not only premature—it is prejudicial. These facts implicate the very rights preserved through the Trust settlement and must remain accessible for litigation under Chapter 13.

WHEREFORE, Debtor respectfully requests that the Court deny any proposed abandonment of the FLP interest and preserve the asset until the motion to convert is resolved and proper valuation and examination can be conducted.

Dated: August 4, 2025

Respectfully submitted,

/s/ Irene Mulkerin

Pro Se Debtor

1740 Adeline Drive

Mechanicsburg, PA 17050