UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:
**IRENE MULKERIN**,
Debtor.
Chapter 7 (Pending Conversion to Chapter 13)
Case No. 1:24-bk-03264-HWV

FILED
**August 4, 2025**
Clerk, U.S. Bankruptcy Court
Middle District of Pennsylvania
Wilkes-Barre

**OBJECTION OF ANDREW WILLIAM MULKERIN TO TRUSTEE'S PROPOSED ABANDONMENT OF THE PAPOUTSIS FAMILY LIMITED PARTNERSHIP (FLP)**

NOW COMES Andrew William Mulkerin, pro se, and respectfully objects to the proposed abandonment of the Papoutsis Family Limited Partnership ("FLP") by the Chapter 7 Trustee in the above-captioned case, and states as follows:

**I. Standing and Procedural Context**

1. I am the spouse of the Debtor and a party in a related Chapter 13 case (Case No. 1:25-bk-01575-HWV), where I assert claims directly impacted by the operations, asset disposition, and financial dealings of the FLP.

2. I have substantial and personal financial interests affected by FLP decisions and conduct. I am a 47% owner of Ventwell, Inc. and APX Seetech Systems, Inc., both of which operated in FLP-owned facilities and were embedded in the same ecosystem controlled by Andrew V. Papoutsis.

3. The shutdown of both Ventwell and Seetech, which caused severe personal financial harm, was coordinated alongside questionable accounting practices, fabricated intercompany loan structures, and concealment of business financials related to the FLP and affiliated APX entities.

**II. Factual Basis for Objection**

4. I was physically present during a meeting between Andrew V. Papoutsis and F&M Trust Bank in which Papoutsis refused to provide financials for APX York Sheet Metal and instead offered unrelated FLP-owned real estate as

1

collateral for a business expansion loan. The facts stated in this paragraph are based on my personal knowledge and are submitted as sworn testimony under penalty of perjury, not as argument or proffer.

5. After the meeting, I had a private conversation with the F&M Trust bankers in the hallway of 255 Church Rd, York—a building owned by the FLP—where they expressed concern that real estate collateralizing APX York Sheet Metal was unusual and unnecessary, and suggested that such a move raised red flags about financial transparency.

6. I informed the bankers that I shared their concern and believe their view of this as a red flag was indeed warranted as Papoutsis regularly withholds financials, and that APX companies were unaudited.

7. Papoutsis' refusal to disclose true business financials and instead use FLP real estate as a shield further substantiates the serious concerns about the integrity of intercompany accounting and misuse of estate-affiliated property.

8. I have previously raised inter-related concerns in my filings in current case 1:25-bk-01575-HWV as well as previous cases including 1:24-bk-00270-HWV. All relevant filings in those cases are incorporated here by reference, including my sworn affidavit at Dkt. 35-1 in my own case, which reaffirms their accuracy and my personal knowledge of the events described.

9. Based on the Debtor's K-1s, it appears that FLP property was indeed used to secure loans benefitting APX-related entities and/or Papoutsis himself—while burdening the FLP with the resulting debt. The FLP now carries liabilities tied to external business obligations without corresponding benefit.

10. That the funds for the Trust Settlement purportedly also came from F&M Trust Bank only further indicates the need for a comprehensive view and investigation to ensure this is not an intentional attempt to avoid judicial scrutiny.

11. These activities directly impact my claims in my own Chapter 13 case. They also illustrate broader coordination across the trust, FLP, and APX conglomerate that remains unexplored and, even more boldly,

unacknowledged as existing by the Chapter 7 Trustee, Steven Carr. This is unacceptable and requires judicial scrutiny.

12. Appraisals conducted by a licensed and qualified appraiser show that the FLP's real estate holdings alone exceed $8 million. Nonetheless, Trustee Carr proposed a settlement value for the FLP interest between $300,000 and $500,000. The discrepancy between appraised value and proposed sale terms, coupled with a decade of phantom income and no distributions, raises serious doubts about whether the estate's interests are being fully protected.

13. The FLP is a central asset tied to overlapping claims involving my own Chapter 13 case and the Debtor's estate. Allowing the FLP to be abandoned would fragment the adjudication of related claims, deny both estates coordinated relief, and effectively shield a common set of actors—Papoutsis, the affiliated APX entities and the FLP—from unified judicial scrutiny.

14. This kind of factual and legal entanglement warrants a coordinated judicial approach. Courts have recognized that where claims, assets, and factual predicates overlap between related debtors, coordinated or consolidated treatment may be required to preserve equitable recovery and avoid conflicting outcomes. See *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005) (discussing substantive consolidation to prevent prejudice where assets and liabilities are intertwined); *In re Lahijani*, 325 B.R. 282, 289–90 (9th Cir. B.A.P. 2005) (trustee cannot abandon valuable asset where doing so would prejudice the estate or render recovery impractical); see also *In re Slack*, 290 B.R. 282, 284–85 (Bankr. D.N.J. 2003) (abandonment is improper where it would compromise coordinated recovery or prejudice related proceedings).

### III. Request for Relief

15. I respectfully request that the Court deny or defer any proposed abandonment of the FLP until:

- A full forensic valuation is completed;
- Discovery and Rule 2004 examinations are allowed and conducted;

- The Debtor's pending motion to convert to Chapter 13 is resolved;
- And the interests of both bankruptcy estates (mine and Irene Mulkerin's) are considered in light of shared litigation objectives.

16. Abandonment at this stage would cut off vital recovery, impair cross-estate claims, and reward financial opacity.

**WHEREFORE**, I respectfully request that the Court deny the Trustee's proposed abandonment of the FLP and preserve this asset for coordinated litigation and equitable recovery.

I declare under penalty of perjury that the facts stated above are true and correct.

**Dated:** August 4, 2025

**Respectfully submitted,**
/s/ Andrew William Mulkerin
Andrew William Mulkerin
Pro Se Party and Interested Creditor
1740 Adeline Drive
Mechanicsburg, PA 17050