# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br>IRENE MULKERIN<br>*Debtor*<br><br>KEITH AND LISA WOLFE<br>*Claimants*<br><br>v.<br><br>IRENE MULKERIN<br>*Debtor*<br><br>STEVEN CARR<br>*Chapter 7 Trustee* | Chapter 7<br><br>Case No. 1:24-bk-03264-HWV |

## RESPONSE OF KEITH AND LISA WOLFE TO DEBTOR'S LIMITED OBJECTION TO CLAIM NO. 1-2

Keith and Lisa Wolfe (the "Claimants" or "the Wolfes"), by and through their undersigned counsel, respectfully submit this Response to the Debtor's Limited Objection (Doc. 511) to their Amended Claim No. 1-2. Debtor objects to $23,185.70 in post-judgment attorney's fees included in Claim No. 1-2. The Objection ignores the express terms of the underlying loan documents, personal guarantee, and suretyship agreements, all of which unambiguously provide for recovery of reasonable attorney's fees incurred in enforcing the joint and several obligations of the Debtor and her spouse.

## **BACKGROUND**

1. <u>The Sale of Wolfe Tool & Machine Company to Mulkerin Tool & Machine LLC</u>

On September 30, 2022, Keith and Lisa Wolfe sold their business (Wolfe Tool & Machine Company) to Mulkerin Tool & Machine LLC ("MTM"), a business entity owned and controlled

by Mulkerin Holdings, LLC, and the Debtor's husband, Andrew Mulkerin (see **Exhibit A - Bill of Sale**). In connection with the purchase of the business, MTM borrowed a portion of the purchase price from York Traditions Bank. The remaining balance of the purchase price was financed directly with the Wolfes via a Promissory Note (See **Exhibit B**) and was secured against certain business assets and real estate as set forth in a Security Agreement (**Exhibit C**) and Open Ended Mortgage and Security Agreement (**Exhibit D**). The Debtor and her husband Andrew Mulkerin also signed a Guarantee and Suretyship Agreement (**Exhibit E**) which unconditionally guaranteed all of the indebtedness and obligations of MTM and any associated collection costs. MTM executed an Explanation of Confession of Judgment (Exhibit F) whereby MTM acknowledged that this was a commercial transaction and knowingly and intelligently entered into the loan agreement which contained a confession of judgment clause.

MTM later defaulted on its obligations to the Wolfes. As a result, on October 11, 2024, the Wolfes filed Complaints in Confession of Judgment against the Debtor and her Husband in the Court of Common Pleas for York County to dockets 2024-NO-007143 (the "Debtor Judgment") (**Exhibit G**) and 2024-NO-007142 (Andrew Mulkerin Judgment) in the amount of $327,039.38 as authorized by the warrants of attorney contained in the Note and Guaranty. The Debtor Judgment and Andrew Mulkerin Judgment are joint and several and are comprised of the following amounts:

- Principal:                              $304,000.00
- Interest (3% per annum)                 $13,680.00
- Late Fees (5% of unpaid balance)        $5,284.38
- Costs                                   $75.00
- Attorney's Fees                         $4,000.00

  Total                                   $327,039.38

2. <u>Bankruptcy Cases</u>. Since the initial default and entry of the Debtor Judgment, the Debtor and her husband Andrew Mulkerin have filed a total of 5 separate bankruptcy cases, summarized as follows.

    a. <u>24-02752</u>. Filed 10/12/24 by Irene Mulkerin. Dismissed for failure to file information.

    b. <u>24-03264</u>. Filed by Debtor 12/18/24. Current Case.

    c. <u>25-01575</u>. Filed 6/2/2025 by Andrew W. Mulkerin. Active Case/Motion to Dismiss by Chapter 13 Trustee pending;

    d. <u>24-00270</u>. Filed 2/24/24 by Andrew W. Mulkerin. Dismissed 10/9/24 with prejudice for a period of 180 days;

    e. <u>24-00020</u>. Filed 1/5/2024 by Andrew W. Mulkerin. Dismissed for failure to file information.

The Wolfes initially retained Stock and Leader to file Complaint for Confession of Judgment against the Debtor and her husband. Later, the Wolfes retained CGA Law Firm and Brent C. Diefenderfer when the bankruptcy cases were filed to monitor the proceedings and to protect their interests. The extensive docket and proceedings are well known to the Court with Debtor and her husband interposing objections and litigating nearly all aspects of their bankruptcy cases, many of which completely lacking in legal merit.

## ARGUMENT

1. **Debtor fails to allege *prima facia* grounds for claim disallowance**

The Federal Rules of Bankruptcy Procedure provide that a proof of claim filed in accordance with the rules establishes the *prima facie* validity of the claim. Fed. R. Bankr. P. 3001(f). When a claim is filed in accordance with Rule 3001(f) and alleges facts sufficient to support the legal liability asserted, the claimant's initial obligation to go forward and burden of

proof are satisfied. In re Allegheny Int'l, Inc., 954 F.2d 167, 173–74 (3d Cir. 1992); In re Henry, 546 B.R. 633, 634–35 (Bankr. E.D. Pa. 2016). Thus, a proof of claim conforming to the rules of court serves as both a pleading and as trial evidence, even in the face of an objection to the claim. In re Sacko, 394 B.R. 90, 100-01 (Bankr. E.D. Pa. 2008); In re Chew, 627 B.R. 112, 114 (Bankr. E.D. Pa. 2021). The Supreme Court has held that in bankruptcy cases the American Rule applies such that prevailing parties are not entitled to attorneys' fees absent a contractual or specific statutory provision allowing them. Baker Botts L.L.P. v. ASARCO LLC, 135 S.Ct. 2158, 2169, 192 L.Ed.2d 208 (2015).

Here, Debtor failed to allege *prima facia* grounds in her objection by baldly asserting that the "American Rule" applies. It does not. The American Rule can be overcome by statute or by enforceable contract allocating attorney fees. Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 127 S. Ct. 1199, 167 L. Ed. 2d 178 (2007). As set forth below, attorney's fees incurred in connection with collection of a commercial loan that are recoverable under a contract are recoverable and enforceable.

Debtor alleges that attorney's fees should be disallowed because no application under Rule 2016 has been made. This rule is inapplicable because it applies only to professionals employed by and to be paid from the bankruptcy estate.

Finally, as set more fully below, Debtor's objection makes citation to non-existent AI generated legal authority which should by itself be sufficient grounds to over-rule the objection.

## 2. **Attorney's Fees Are Recoverable Under the Guaranty and Suretyship Agreement**

Pursuant to 11 U.S.C. § 502(b)(1), a claim is disallowed only to the extent it is unenforceable under applicable nonbankruptcy law. Here, the fees are recoverable under Pennsylvania law, rendering them enforceable and thus allowable under § 502(b). There is no basis to disallow the Wolfes' attorneys' fees under section 502(b), as they are contractually authorized and enforceable under applicable Pennsylvania law. The Guaranty and Suretyship Agreement ("the Agreement")(Exhibit E) states:

> Section 9 states that "the Guarantor shall pay to Wolfe, upon demand, all costs and expenses, including reasonable attorney's fees (whether or not suit is filed or judgment confessed) and accrued interest and court costs that may be incurred by Wolfe in attempting to cause satisfaction of the guarantor's liability under this guarantee, or to otherwise enforce guarantor's obligations.
>
> Section 10 (Confession of Judgment Clause) states "the Guarantor hereby authorizes the prothonotary or any attorney admitted to practice before any court of record in the United States to appear on behalf of the Guarantor in any such court in one or more proceedings, or before any clerk thereof, and to confess judgment against the Guarantor without prior notice or opportunity for prior hearing, in favor of Wolfe in full amount due on this guarantee, plus costs of suit and reasonable attorney's fees."

The judgment against the Debtor entered in the York County Court of Common Pleas includes an award of attorney's fees consistent with these contractual provisions, confirming that recovery of such fees is part of the debt itself. Under Pennsylvania law, such fee-shifting clauses are fully enforceable. The American Rule states that a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties or some other established exception. Lavelle v. Koch, 532 Pa. 631, 617 A.2d 319, 323 (1992); Mosaica Acad. Charter Sch. v. Com. Dep't of Educ., 572 Pa. 191, 206–07, 813 A.2d 813, 822 (2002). This is also true in the context of a confession of judgment for a commercial loan

agreement, as is the case here and as disclosed in the Disclosure for Confession of Judgment. In <u>Dollar Bank, Fed. Sav. Bank v. Northwood Cheese Co.</u>, 431 Pa. Super. 541, 637 A.2d 309 (1994), the Pennsylvania Superior court held that a warrant of attorney authorizing confession of judgment permitted 15% attorney's commission, and in absence of any specific argument concerning alleged excessiveness of fee awarded in accordance with such provision, confessed judgments did not have to be vacated in order to determine reasonableness of fees.

Here, the Wolfes are contractually entitled to all reasonable attorney's fees incurred in enforcing the Note, both pre-judgment and post-judgment, including in this Bankruptcy proceeding. Both the Note and Guarantee authorize a percentage of 10% of the unpaid balance and interest thereon (notably less than the 15% authorized by <u>Dollar Bank</u>) and that amount of the attorney's fees sought to be recovered as part of the Proof of Claim are less than which is authorized under the confession of judgment clauses contained in the Note and the Guarantee and Suretyship Agreement.

3. **The Guaranty and Suretyship Agreement Creates Joint and Several Liability Between the Debtor and Husband**

Debtor's attempt to exclude fees incurred in connection her husband Andrew Mulkerin's several bankruptcy cases disregard the joint and several liability created by the Agreement (Section 13: Joint and Several Liability), which provides:

> "The liability of the guarantor under this guarantee, to the extent herein provided, is individual, joint, absolute and unconditional, without regard to the liability of any other person, and shall not in any manner be affected by reason of any action taken or not taken by Wolfe, which action or inaction is herein consented and agreed to, nor by the partial or complete unenforceability or invalidity of any other guarantee or suretyship agreement, pledge, assignment or other security for any of the company's obligations to Wolf. No delay in making demand on the guarantor for satisfaction of the guarantor's liability hereunder shall prejudice

> Wolfe's right to enforce such satisfaction. All of Wolfe's rights and remedies shall be cumulative and any failure of Wolfe to exercise any right hereunder shall not be construed as a waiver of the right to exercise the same or any other right at any time, and from time to time, thereafter. The liability of the guarantor hereunder shall be joint and several with the liability of each other and with any other persons who have guaranteed the obligations of the company to Wolf. If more than one guarantor has executed this guarantee, the liability of each signatory and shall be joint and several."

Legal fees for preparing and filing the state court confession of judgment complaint necessarily encompass both Irene and Andrew Mulkerin as named defendants and joint obligors and arose from MTM's default. The work cannot be meaningfully segregated - nor does the Guarantee require it. Debtor's attempt to exclude fees incurred against the co-guarantor fails under the binding joint and several obligations created by the Agreement. The claimed fees are well documented, reasonably incurred, and driven in substantial part by Debtor's own substantial and unjustifiably litigious conduct in this bankruptcy proceeding.

The Debtor cites a case "In re McGuier, 759 F.2d 8 (3d Cir. 1985)" for the proposition that joint and several liability against different obligors should be disallowed. ***However, no such case exists.*** The case at the citation provided by the Debtor is S.E.R., Jobs For Progress, Inc. v. United States, 759 F.2d 1 (Fed. Cir. 1985), which is a case involving the Department of Labor Board of Contract Appeals and has zero relevance. Debtor's over-reliance on AI tools is manifest and appears to rely, at least in part, on fictitious case citations hallucinated by artificial intelligence tools. To the extent Debtor cites legal authority that cannot be verified through any known legal database or court record, such reliance is not only improper but is tantamount to bad faith.

Debtor incorrectly suggests that unsecured status bars post-petition fees under 11 U.S.C. § 506(b). That section limits over-secured creditors' rights to post-petition interest but does not preclude allowance of contractual attorney's fees in general. Section 502(b) governs claim

allowance and explicitly recognizes contractual attorney's fees if valid under state law. Moreover, the substantial record shows Debtor's own conduct has substantially driven up costs, including objections to the proof of claim and the costs related to collecting to indebtedness. The Wolfes have provided detailed billing records to the Debtor showing date-stamped entries, descriptions of the work performed and attorney time entries and hourly rates. These invoices demonstrate that the fees were actually incurred, were necessary, and were reasonable in amount.

4. **The Fees and Costs Are Reasonable And Necessary**

As noted above, the Note and Guarantee unambiguously allow for recovery of all attorney's fees and costs associated with enforcing the Wolfes' collection rights. However, if reviewed under the Lodestar method, the fees incurred are reasonable in light of the complexity, the number of bankruptcy cases filed, and the Debtor's extensive litigation posture throughout. The invoices reflecting detailed billing have been redacted to maintain client confidentiality and work product privilege. In summary, the invoices reflect activity in the following categories:

- Pre-petition state court enforcement including drafting, filing and serving the complaint in confession of judgment.
- Review and analysis of the assets, exemptions and other relevant information disclosed by the Debtor and her spouse in their several bankruptcy cases.
- Review of supporting documentation and preparation of Proofs of Claim in the several bankruptcy cases.
- Attending Meetings of Creditors to question the Debtor and her husband in the several bankruptcy cases and alleged offset claims.

- Frequent appearances in Bankruptcy Court hearings to monitor the proceedings to determine if action was necessary to preserve, enforce and safeguard the Wolfes' claim.
- Reviewing and monitoring the proceedings involving distribution of assets from the Debtor's bankruptcy estate, including the proceedings involving the litigation with the Debtor's interest in the family trust.
- Responding to correspondence and discovery requests from the Debtor and her husband.
- Review and analysis of the Debtor's objections, motions, and discovery in the several bankruptcy cases.
- Reviewing all filings and docket entries to determine appropriate avenues for collection.

These efforts directly advanced the Wolfes' rights and were reasonably necessary under the circumstances. To the extent further disclosure is warranted, Claimants respectfully request that any unredacted invoices be submitted to the Court for in camera review to preserve applicable privileges.

**5. Invoices Were Provided with Appropriate Redactions to Preserve Privilege, and Production Was Voluntary**

Debtor's assertion that production was "delayed" or coerced under threat of sanctions is false. The invoices were produced as a courtesy in response to Debtor's requests and not on account of any legal obligation. The invoices were appropriately redacted to maintain attorney–client communications and attorney work product protection, consistent with Pennsylvania law and ethical obligations. Despite redactions, the invoices provided clear descriptions, dates, time entries, and billed amounts—sufficient to verify the reasonableness of the charges. Debtor's capricious demands, arbitrary deadlines and barrage of follow-up emails did not create any valid or enforceable obligation to produce them under threat of sanctions. In producing the invoices,

Claimants expressly reserved all rights and privileges, and no waiver of attorney–client or work product protections occurred. Should the Court deem further review necessary, the Wolfes are willing to submit unredacted invoices for in camera inspection.

## CONCLUSION

For the foregoing reasons, the Wolfes respectfully request that this Court:

1. Overrule Debtor's Limited Objection to Claim No. 1-2;

2. Allow Claim No. 1-2 in its full amended amount, including $23,185.70 in attorney's fees; and

3. Award such additional attorney's fees as have been incurred by Claimants in defending the Amended Claim Objection, in an amount to be established by the Court at a hearing;

4. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

CGA Law Firm

/s/ Brent C. Diefenderfer
Brent C. Diefenderfer, Esquire
135 North George Street
York, Pennsylvania 17402
(717) 848-4900
bdiefenderfer@cgalaw.com
*Attorneys for Keith and Lisa Wolfe*

IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br>IRENE MULKERIN<br>*Debtor*<br><br>KEITH AND LISA WOLFE<br>   *Claimants*<br><br>v.<br><br>IRENE MULKERIN<br>   *Debtor*<br><br>STEVEN CARR<br>   *Chapter 7 Trustee* | Chapter 7<br><br>Case No. 1:24-bk-03264-HWV |

## **CERTIFICATE OF SERVICE**

I certify that the Response to Debtor's objection to Amended Proof of Claim was served on the following via ECF.

Irene Mulkerin
   *Debtor*

STEVEN CARR
   *Chapter 7 Trustee*

 

Respectfully submitted,

CGA Law Firm

/s/Brent C. Diefenderfer
Brent C. Diefenderfer, Esquire
135 North George Street
York, Pennsylvania 17402
(717) 848-4900
bdiefenderfer@cgalaw.com
*Attorneys for Keith and Lisa Wolfe*