UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: : NO. 24-03264-HWV
  Irene Papoutsis Mulkerin :
  :
  Debtor : Chapter 7

## TRUSTEE'S OBJECTION TO DEBTOR'S MOTION TO CLARIFY OR, IN THE ALTERNATIVE, MODIFY THE ORDER APPROVING COMPROMISE

AND NOW, comes the Trustee, by his attorney, Steven M. Carr, Esquire, of the law firm of Ream, Carr, Markey & Woloshin, LLP, and files this Objection of which the following is a statement:

1.    Objector is the duly appointed Trustee in the above-captioned Bankruptcy.

2.    While the factual and procedural history are well-known to the court, Trustee highlights some of those in support of his objection to Debtor's latest attempt to overturn or limit valid final and binding orders of this court.

3.    On June 3, 2025, the court issued a final Order, (Doc. 446) (the "Final Order"), confirming the compromise that had been approved on a conditional basis as to litigation previously in the Delaware Chancery Court (the "Litigation"), as previously set forth the court's Order of May 28, 2025, (Doc. 410).

4.    The Settlement Order and accompanying settlement agreement clearly and unequivocably released the Defendants in the Litigation from any and all claims of the Debtor in relation to the Trust in exchange for a payment of $3,150,000.00.

5.    In reliance thereon, the settlement was funded and settlement proceeds were paid to Trustee.

6.    Subsequently, on February 10, 2026, the court approved the Trustee's final account. (Doc. 771) (the "Final Account").

7. Trustee then distributed the settlement proceeds pursuant to the Final Account, including a payment to Debtor of an amount in excess of $1.1 million (plus $150,000.00 that was previously distributed to debtor as part of a court-approved interim distribution).

8. The only monies remaining from the compromise/settlement funds is $15,000.00 that was escrowed to pay final attorney's fees to Trustee's attorney.

9. While Debtor initially appealed the court's approval of the Trustee's Final Account, Debtor discontinued that appeal and the appeal was dismissed on May 5, 2026. (Doc. 805).

10. Further, Debtor had previously filed a Motion to Clarify regarding the "120 day" issue at Docket 510, which Motion was denied by Order of August 26, 2025 at Docket 595.

11. Additionally, Debtor has already tried to prosecute a claim (the "Claim") against her father and the Trust and other related parties by pressing her theory that she still had rights against them notwithstanding the bankruptcy settlement.

12. Debtor attempted to prosecute the Claim by filing a Complaint in United States District Court for the Middle District of Pennsylvania at 25-cv-1776.

13. In response to the Complaint, the court issued a Rule to Show Cause why the suit should not be dismissed as an improper appeal of the bankruptcy court order approving the settlement.

14. When Debtor was unable to show cause, the complaint was dismissed with prejudice.

15. Though couched in terms of "clarifying" the order, the result of which would somehow preserves a cause of action or rights in the debtor, despite the clear extinguishment of all causes of action as a result of the approved compromise.

2

## A. DEBTOR'S MOTION IS UNTIMELY UNDER L.B.R. 9023-1

16.     Debtor's Motion should be denied first because it is untimely.

17.     Debtor seeks three alternative forms of relief: (1) an order "clarifying" that the Debtor is not bound by the releases in the Settlement Agreement; (2) relief under Fed. R. Civ. P. ("Civil Rule") 60(b)(4) because, Debtor argues, the Order approving the Settlement Agreement is void because this Court exceeded its lawful authority; and (3) relief under Civil Rule 60(b)(3) based upon alleged fraud by the Debtor's Delaware state court counsel.

18.     The Debtor cites Civil Rule 60(b), made applicable to these proceedings by Fed. R. Bankr. P. ("Bankruptcy Rule") 9024, as the authority for the relief sought.[1]

19.     Pursuant to this Court's Local Rules, L.B.R. 9023-1, Motions for reconsideration must be brought within 14 days of entry of the original order. L.B.R. 9023-1.

20.     Motions for relief from a judgment or order under Civil Rule 60 are also subject to the 14-day timeliness requirement for motions for reconsideration., see L.B.R. 9024-1.

21.     In this case, the underlying Final Order which Debtor now seeks to modify was entered on June 3, 2025. (Doc. 446).

22.     Given that it has been nearly a year since the Final Order was entered, Debtor's Motion is well outside the 14-day window and should be denied as a result.

23.     Further, distribution of almost all settlement funds pursuant to the Final Order has occurred.  In short, under the doctrines of equitable mootness, res judicata and collateral estoppel require that the instant Motion be Dismissed.

---

[1] No separate authority is cited for the request for "clarification." **Error! Main Document Only.**  Moreover, as noted above, though couched in terms of "clarifying" the order, what Debtor really seeks is a reconsideration of the Order the result of which would somehow preserve a cause of action or rights in the debtor despite the clear extinguishment of all causes of action as a result of the approved compromise.

3

**B. DEBTOR'S MOTION SHOULD BE DENIED ON THE GROUNDS OF EQUITABLE MOOTNESS, RES JUDICATA, AND COLLATERAL ESTOPPEL**

24. Debtor's Motion should also be denied because it is equitably moot.

25. Equitable mootness applies where "an appellate court deems it prudent for practical reasons to forbear deciding an appeal when to grant the relief requested will undermine the finality and reliability of consummated plans of reorganization." *In re Tribune Media co.*, 799 F.3d 272, 277-78 (3d Cir. 2015).

26. "Factors that have been considered by courts in determining whether it would be equitable or prudential to reach the merits of a bankruptcy appeal include (1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments." *In re Continental airlines,* 91 F.3d 553, 560 (3d Cir. 1996) (*en banc*).

27. Here, similar considerations merit denial of the Debtor's Rule 60(b) motion.

28. The Settlement Agreement resolved a significant, multi-million dollar dispute involving numerous nonparties to this bankruptcy proceeding.

29. In reliance on the Final Order approving the Settlement Agreement, the settlement was funded and the settlement proceeds were paid to the Trustee.

30. Subsequently, on February 10, 2026, this Court approved the Trustee's Final Account. (Doc. 771).

4

31. The Trustee then distributed the settlement proceeds pursuant to the Final Account, including a payment to the Debtor of an amount in excess of $1.1 million (plus $150,000.00 that was distributed to the Debtor as part of a court-approved interim distribution).

32. In addition to resulting in a significant amount of money being paid into the bankruptcy estate, and ultimately to the debtor, the Settlement Agreement resulted in the dissolution of the Trust and decanting of the Trust assets into separate trusts for the benefit of the Debtor's siblings.

33. The only monies remaining from the compromise/settlement are $15,000.00 that was escrowed to pay final attorney's fees to Trustee's attorney.

34. This settlement has therefore been fully consummated, and granting the Debtor's Rule 60(b) motion would undo all of this to the detriment of the numerous parties involved. Further, attempting to regain the funds distributed by the Trustee would be difficult, including regaining funds paid to the Debtor.

35. While Debtor initially appealed the court's approval of the Trustee's Final Account, Debtor discontinued that appeal and the appeal was dismissed on May 5, 2026.

36. Accordingly, the case is and has been properly and finally administered and the issues at hand have been rendered equitably moot.

37. Further, Debtor had previously filed a Motion to Clarify regarding the "120 day" issue at Docket No. 515, which Motion was denied by Order of August 26, 2025, at Docket No. 595. There was no appeal of that order.

38. Additionally, the District Court suit, wherein Debtor tried to prosecute a claim against her father, the Trust, and other related parties by pressing the same theory raised herein was dismissed with prejudice.

39.     Thus, the concepts of res judicata and collateral estoppel require that the instant Motion be Dismissed.

## C. DEBTOR HAS NOT ASSERTED LEGITIMATE GROUNDS FOR RELIEF UNDER RULE 60(B)(4)

40.     Debtor now also posits the notion that Rule 60(b) entitles her to relief, which notion is neither legally nor factually correct.

41.     Rule 60(b)(4) permits a court to grant relief from a judgment when "the judgment is void." Fed. R. Civ. P. 60(b)(4).

42.     Relief from a final order or judgment under Rule 60(b) is discretionary, not a matter of right. *Waetzig v. Halliburton Energy Services, Inc.*, 604 U.S. 305, 315 (2025).

43.     Debtor argues that this Court's Order approving the Settlement Agreement is void because the Trust is not part of the bankruptcy estate and, therefore, this Court lacked the jurisdiction to enter its Order approving the Settlement Agreement.

44.     Debtor is incorrect because she fails to recognize that her interest in the Delaware Action (along with all other causes of action that she may have) is part of the bankruptcy estate and thus, the Trustee had the authority to settle these causes of action.

45.     Debtor argues that the Settlement Agreement was not effective to release or limit her claims against Kornfield and Wilmington Trust because the Settlement Agreement applied to and was executed by the Chapter 7 Trustee, rather than Debtor personally, and because her interest in the Trust was not property of the bankruptcy estate.

46.     Debtor's argument is based upon Section 541(c)(2) of the Bankruptcy Code, which provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).

6

47. By asserting that her beneficial interest in the Trust was not property of the estate, Debtor continues to misunderstand that she made the Trust interest property of the estate by commencing the Delaware Action and seeking a termination of the Trust thereby causing a cause of action to exist, not a trust action, as occurred in her case.

48. This action by the Debtor resulted in the matter becoming a cause of action, which *is* part of the bankruptcy estate and which is not subject to the exclusion in Section 541(c)(2). *See In re Amerson*, 839 F.3d 1290, 1300-01 (10th Cir. 2016) (holding that a probate contest of a will containing a spendthrift trust did not qualify for the Section 541(c)(2) exception because it was "simply a cause of action that has some present value, whatever that may be, and is a distinct asset of its own").

49. Further, Debtor has waived any Claim to the contrary by failing to make any such Claim as to the nature of the Trust prior to the entry of the Final Order approving the settlement agreement and compromise by this Court.

50. Debtor next argues that she is entitled to relief from this Court's Order under Civil Rule 60(b)(4).

51. This argument lacks merit because, as discussed above, the Delaware Action is part of the bankruptcy estate and the Trustee had the right to compromise it, subject to this Court's approval, as occurred.

**D. DEBTOR HAS NOT ALLEGED GROUNDS SUFFICIENT TO JUSTIFY RELIEF UNDER RULE 60(b)(3)**

52. Debtor next argues that she is entitled to relief from this Court's Order approving the Settlement Agreement under Civil Rule 60(b)(3) because the Trustee somehow led the Debtor to believe that it was the Trustee's interest in the Trust and potential claims that would be extinguished rather than the Debtor's interest in the Trust.

7

53. Civil Rule 60(b)(3) provides that a "court *may* relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . fraud . . . , misrepresentation, or misconduct by an opposing party . . . ." Fed. R. Civ. P. 60(b)(3).

54. As with all Rule 60(b) motions, a motion for relief from a final order or judgment under Rule 60(b)(3) is discretionary, not a matter of right. *See Waetzig*, 604 U.S. at 315.

55. A party seeking relief under Civil Rule 60(b)(3) must show that "the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case." *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983).

56. Here, Debtor cannot make such a showing.

57. Debtor's argument is based solely upon a Clarifying Statement, which provides that "[a]ll references to 'Irene' in the Settlement Agreement shall be deemed to be the Bankruptcy Trustee on behalf of the Bankruptcy Estate, where relevant[.]" (Doc. 806 at ¶ 80).

58. Stated differently, the Debtor claims that she misunderstood the Clarifying Statement, that her misunderstanding is somehow the Trustee's fault, and that she is entitled to relief from this Court's Order approving the Settlement Agreement as a result.

59. Whether Debtor interpreted a document filed in court in one fashion or another does not cause a misrepresentation to have been made.[2]

60. Given that Debtor repeatedly challenged every action by the Trustee, it is laughable to suggest that Debtor relied on anything that the Trustee did.

61. There was also no misconduct on the part of the Trustee, nor are there any new facts, that would justify relief under Rule 60(b)(3). Debtor was aware of all facts set forth in the

---

[2] The court religiously began every court hearing by asking the Debtor whether she had obtained counsel and repeatedly urged Debtor to obtain counsel. That Debtor chose to proceed on her own and drew her own conclusions regarding actions by the Trustee is not a misrepresentation.

8

Motion, and she has failed to demonstrate how anything the Trustee did prevented her from fully and fairly opposing the Trustee's request to approve the Settlement Agreement. Debtor chose to proceed *pro se*. What she understood is not based upon any fraud by the Trustee

62. In fact, the Debtor previously filed a Motion for Clarification on July 16, 2025 which asked, in part, that this Court clarify the date upon which the 120-day period for her to file claims in Delaware state court began to run. (Doc. 510 at 4). This Court declined to entertain the Motion. (Doc. 520).

63. The Debtor failed to take any further steps for nearly a year to seek clarity on the 120-day issue.

64. Given that the Debtor previously sought additional information on this issue, Debtor cannot now claim that she was misled to her detriment as to when the 120-day period started.

65. Next, Debtor asserts that the Trustee engaged in misconduct by "causing" Attorney Atlas to breach his professional obligations.

66. Further, to assert that Trustee and Debtor were "adverse parties in a contested matter" is incorrect and disingenuous.

67. Once the Trustee was appointed, it became his statutory duty to liquidate the asset either by settlement or proceeding with the Litigation; again, the Debtor had no rights in the asset nor rights to control the Trustee in the performance of his duties.[3]

68. Having "stepped into the shoes of the Debtor," the same way that an Executor of an estate replaces a deceased individual, the Trustee began to evaluate the lawsuit regarding the Trust.

---

[3] The Court repeatedly advised Debtor that this was the case.

9

69. At the outset, the Debtor's premise that Attorney Atlas represented the Trustee in these bankruptcy proceedings is incorrect. Rather, Attorney Atlas was proposed as special counsel to assist with finalizing the settlement of the Delaware Action. (Doc. 28, Motion to Employ Atty. Atlas; Doc. 137, Transcript of Hearing, at 8:25-9:16).

70. It is also unclear how Attorney Atlas's appointment as special counsel constitutes fraud, misrepresentation, or other misconduct that prevented the Debtor from fully and fairly opposing the request for approval of the Settlement Agreement.

71. It is certainly a normal occurrence for a Trustee to engage the same counsel employed by the Debtor when the Trustee "inherits" a suit upon the filing of a bankruptcy petition. (*See* Doc. 137 at 9:17-10:3, 13:17-23).

72. The reason to do so is somewhat obvious in that state court counsel had the most knowledge regarding the suit and most likely would have been more economically prudent than entirely new counsel.

73. Previously, Debtor vigorously objected to the Trustee's Motion to appoint Attorney Atlas as special counsel. (Doc. 123).

74. Debtor's objections included the very same issues that she raises here: namely, that Attorney Atlas's representation of the Trustee was improper given that he had previously represented the Debtor and the Trustee's interests are "materially adverse" to those of the Debtor. (Doc. 123 at 2).

75. Debtor also argued at length in court that Attorney Atlas could not represent the Trustee in the Delaware Action because he had previously represented her. (Doc. 137 at 11:3-21:11).

76. After allowing extensive argument by the Debtor, this Court found that no conflict existed and overruled the Debtor's Objection. (Doc. 137 at 21:9-22:14).

10

77. The Debtor now argues, however, that employment of Attorney Atlas was improper under Pennsylvania Rule of Professional Conduct 1.9.

78. Debtor's argument amounts to a request that this Court reconsider its prior approval of Attorney Atlas because she failed to raise Rule 1.9 as a ground for objection.

79. Under the law of the case doctrine, a court should "refrain from re-deciding issues that were resolved earlier in the Litigation" and applies equally to courts of coordinate jurisdiction in the same case as well as to a court's own decisions. *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997).

80. Departure from this rule is generally appropriate only in certain "extraordinary circumstances": when "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Id.* at 116-17.

81. None of these circumstances are present here.

82. Debtor's Rule 1.9 argument is based on the same facts and arguments that were already presented to and rejected by this Court. Debtor has not identified any new evidence.

83. Debtor likewise has not identified any supervening new law.

84. Further, the Debtor has failed to demonstrate that this Court's Order authorizing the employment of Attorney Atlas was clearly erroneous.

85. Rule 1.9[4] provides that, absent informed consent,

> [a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter *in which that person's interests are materially adverse to the interests of the former client . . . .*

---

[4] For clarity, Attorney Atlas is a Delaware-licensed attorney and it is the Delaware Rules of Professional Conduct that govern his conduct. Nevertheless, Delaware Rule of Professional Conduct 1.9 is substantially similar to the Pennsylvania rule and differs only in that Delaware requires informed consent to be confirmed in writing while Pennsylvania does not.

11

86. Del. R. Prof. C. 1.9(a) (emphasis added).

87. Under Rule 1.9(a), a conflict could exist only if the Debtor and Trustee had materially adverse interests *in the Delaware Action*.

88. Upon filing of this bankruptcy case, however, the Debtor ceased to have *any* interest in the Delaware Action because, as discussed above, her interests in the Delaware Action became part of the bankruptcy estate. The Trustee has the right to administer the assets of the bankruptcy estate.

89. As such, there can be no conflict because the Debtor was no longer a party to the Delaware Action at the time the Settlement Agreement was approved.

90. Indeed, the Debtor cites as an example of the purported "conflict" the fact that Attorney Atlas supposedly violated client confidences by telling the Trustee that she was "difficult to deal with." (Doc. 806 at ¶ 104).

91. Aside from the fact that this statement does not appear to violate any client confidences, any attorney-client privilege with respect to the Delaware Action is held by the Trustee because the Debtor's interest in the Delaware Action is part of the bankruptcy estate. (*See* Doc. 137 at 12:15-18).

92. Moreover, this Court conducted a searching inquiry and gave the Debtor ample opportunity to raise any conflicts of interest, including permitting her to file a late objection to the appointment of Attorney Atlas (Doc. 84), and the Court found that no conflict exists.

93. The court approved the hiring of Attorney Atlas, and while that was opposed by Debtor, there was no appeal of the court's approval; thus the issue has been waived and the law of the case controls. Further, as set forth above, the request for reconsideration is time barred

12

94. Additionally, there was no conflict of interest with the Debtor as the Debtor had no ownership of the asset; that Debtor ultimately challenged the Trustee's business judgment in accepting the compromise doesn't change the fact that the Debtor had no ownership.

95. Further, Attorney Atlas acted ethically and properly at all times, and if not for his efforts, the settlement that Debtor agreed to before she reneged on her agreement probably would not have been achieved.

96. Trustee also points out that Attorney Atlas is a Delaware attorney, and his representation on behalf of first the Debtor and then the bankruptcy estate was exclusively in Delaware; his role in the bankruptcy case was as a witness to assist the Trustee in explaining his business decision to accept the settlement rather than proceed with Litigation.

97. Trustee repeats that it was his duty to liquidate the asset and that in proposing to compromise the claim, the question was whether he was justified in making the decision that he made, and all components that went into that decision were properly put before the court without any misconduct.

98. In sum, Debtor has not established any fraud, misrepresentation, or misconduct by an opposing party that would support relief from this Court's Order approving the Settlement Agreement.

99. Finally, given the effects that granting relief from the Final Order approving the Settlement Agreement would have on third parties, even if this Court finds that the Debtor has asserted grounds sufficient to grant relief, this Court should exercise its discretion to deny any relief under Rule 60(b).

13

WHEREFORE,  Chapter 7 Trustee prays that the Motion to be denied and dismissed with prejudice.

Ream, Carr, Markey Woloshin & Hunter, LLP

/s/ Steven M. Carr
Steven M. Carr, Esquire
Attorney for Trustee
119 East Market Street
York, PA  17401
(717) 843-8968
I.D. #34336

14