**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| IRENE PAPOUTSIS MULKERIN, | : | Case No. 1:24-bk-03264-HWV |
| Debtor. | : | Chapter 7 |

**OBJECTION OF ANDREW V. PAPOUTSIS IRREVOCABLE TRUST TO DEBTOR'S MOTION TO DISQUALIFY UNITED STATES BANKRUPTCY COURT JUDGES FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

The Andrew V. Papoutsis Irrevocable Trust (the "Trust"), by and through its bankruptcy counsel, Cunningham, Chernicoff & Warshawsky, P.C., files this Objection to Debtor's Motion to Disqualify United States Bankruptcy Court Judges for the Middle District of Pennsylvania (Doc. 810) and states as follows:

**FACTUAL BACKGROUND**

1.     On December 18, 2024, Debtor Irene Papoutsis Mulkerin ("Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Petition") in the United States Bankruptcy Court for the Middle District of Pennsylvania. (Doc. 1).

2.     Debtor's Petition is her second bankruptcy Petition. Debtor filed a previous voluntary Chapter 7 petition in the Middle District of Pennsylvania on October 25, 2024, which petition was docketed at Docket No. 1:24-bk-02752-HWV (the "Prior Case").

3. The Prior Case was dismissed due to the Debtor's failure to file all the required bankruptcy schedules and a Statement of Financial Affairs as required by 11 U.S.C. § 521 and Bankruptcy Rule 1007. (No. 1:24-bk-0272-HWV, Doc. 70).

4. Both the Prior Case and the instant case were assigned to the Honorable Henry W. Van Eck.

5. The instant bankruptcy case has been vigorously litigated by the Debtor, with numerous motions and other filings throughout the course of the case.

6. As of this filing, this case has over 810 docket entries.

7. One of the many disputes in this case relates to approval under Bankruptcy Rule 9019 of a compromise of certain litigation in the Delaware Chancery Court (the "Litigation").

8. This Court entered an Order on May 28, 2025 conditionally approving the settlement, (Doc. 410), and then a Final Order on June 3, 2025 confirming the same, (Doc. 446).

9. The Final Order and accompanying settlement agreement clearly and unequivocally released the Defendants in the Litigation from any and all claims of the Debtor in relation to the Trust in exchange for a payment of $3,150,000.00.

10. In reliance upon this Court's approval of the Final Order, the settlement was funded and the settlement proceeds were paid to the Trustee.

2

11.     The Debtor filed a Motion for Clarification of the Final Order on July 16, 2025, (Doc. 510), but this Court declined to entertain the Motion, (Doc. 520), effectively denying the Motion.

12.     Subsequently on February 10, 2026, this Court approved the Trustee's final account. (Doc. 771, the "Final Account").

13.     The Trustee then distributed the settlement proceeds pursuant to the Final Account, including a payment to Debtor of an amount in excess of $1.1 million (plus $150,000 that was previously distributed to Debtor as part of a court-approved interim distribution).

14.     The Debtor initially appealed the Court's approval of the Final Account, (Doc. 778), but eventually discontinued the appeal, which was dismissed on May 5, 2026, (Doc. 805).

15.     Debtor was granted a discharge on February 12, 2026. (Doc. 773).

16.     Despite the fact that the settlement of the Litigation was approved nearly a year ago, the settlement proceeds have been distributed, the bankruptcy estate has been fully administered, and the Debtor has been granted a discharge, the Debtor filed a Motion on May 27, 2026 under Federal Rule of Civil Procedure 60(b) and Bankruptcy Rule 9024. (Doc. 806, the "60(b) Motion").

17.     The 60(b) Motion – which both lacks substantive merit and is untimely under Local Bankruptcy Rules 9023-1 and 9024-1 – seeks to undo the Final Order

3

approving the compromise of the Litigation to the detriment of the numerous parties who have relied upon the Final Order over the past year.

18. The Trustee filed an Objection to the 60(b) Motion, (Doc. 808), and the Trust joined in the Objection, (Doc. 809).

19. Chief Judge Van Eck has presided over both the Prior Case and the instant case from their initial filing and is uniquely well-positioned to evaluate the merits of the 60(b) Motion. Further, it is a well-settled rule that judges should interpret their own Orders.

20. Yet, the Debtor has now filed a meritless Motion to Disqualify United States Bankruptcy Court Judges for the Middle District of Pennsylvania (Doc. 810, the "Disqualification Motion") seeking disqualification of the entire United States Bankruptcy Court for the Middle District of Pennsylvania because of the pendency of a criminal case against the Debtor's spouse, Andrew Mulkerin ("Andrew").

## THE ANDREW MULKERIN CRIMINAL CASE

21. On February 18, 2026, a grand jury empaneled in the United States District Court for the Middle District of Pennsylvania returned an indictment (the "Indictment") accusing Andrew of knowingly and intentionally threatening to "murder and assault unnamed United States judges and unnamed Federal law enforcement officers, with the intent to impede, intimidate, and interfere with such judges and officers while engaged in the performance of their official duties, and

4

with the intent to retaliate against such judges and officers on account of the performance of official duties . . . ." (Doc. 810-1).

22. The threats were allegedly made "[o]n or about January 7, 2026, in Dauphin County," (*id.*), which is the same day that Andrew Mulkerin's Chapter 13 bankruptcy case that was pending before this Court – his fourth individual bankruptcy filing – was dismissed.

23. Andrew's criminal case remains pending and is currently scheduled for trial on July 13, 2026. (No. 1:26-cr-00022, 5/14/26 Verbal Scheduling Order).

24. Allegedly, relying upon Andrew's criminal charges, and despite failing to identify any link between Andrew's charges and her bankruptcy case other than their personal relationship, Debtor contends that all bankruptcy judges in the Middle District of Pennsylvania should be disqualified from hearing her 60(b) Motion.

## LEGAL ARGUMENT

25. Debtor seeks disqualification under 28 U.S.C. § 455(a) which provides:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. § 455(a).

26. This provision requires a judge to recuse himself or herself "where a reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality." *United States v. Dalfonso*, 707 F.3d 757, 760 (3d Cir. 1983); *In*

5

*re Kensington Intern, Ltd.*, 368 F.3d 289, 301-02 (3d Cir. 2004) ("The test for refusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned.").

27.     A party moving for disqualification under Section 455(a) need not show actual bias because this section "'concerns not only fairness to individual litigants, but, equally important, it concerns "the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted."'" *Kensington*, 368 F.3d at 302 (quoting *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 162 (3d Cir. 1993)).

28.     As the Debtor correctly notes, there is no evidence whatsoever to support a claim of actual bias or prejudice as to any judge of the Middle District of Pennsylvania. (Doc. 810 at ¶ 22).

29.     Therefore, the only issue before this Court is whether Andrew's conduct, and the criminal proceedings against him, creates an appearance of potential bias if this Court hears this Debtor's untimely 60(b) Motion.

30.     Nonetheless, the Debtor has failed to identify any reason that any appearance of bias as to Andrew that might exist (and it is not conceded that any such bias does exist) should be imputed to the Debtor.

31.     *Dalfonso* was a criminal prosecution for distribution of and conspiracy to distribute controlled substances. *Id.* at 758. During a pretrial conference in the

6

case, counsel for one of the defendants reported that a former client of the presiding judge had told the defendant's father that he could "fix" the case through his relationship with the judge in exchange for a $100,000 payment. *Id.* at 759. The judge ultimately declined to recuse himself, and the defendant was convicted after a jury trial. *Id.* at 759-60.

32. On appeal, the defendant argued that the presiding judge should have recused himself, but the Third Circuit rejected this argument. The court noted that there was nothing in the record to indicate that the trial judge held the defendant responsible for the incident or that the corruption allegation had affected the judge's ability to preside over the case impartially. *Id.* at 760.

33. The Third Circuit also held that recusal based upon the behavior of third parties was inappropriate because it "might set an undesirable precedent" and "open avenues for judge shopping by impelling the trial judge to recuse." *Id.* at 761.

34. In *United States v. Salerno*, No. 98 C 3980, 2000 WL 821713 (N.D.Ill. June 23, 2000), a murder defendant sought recusal under 28 U.S.C. § 455(a) based upon death threats made against the presiding judge by a co-defendant. *Id.* at *3-4. Concluding that the defendant was not reported to be a source of the threats or directly connected to the treats in any way, the court held that there was not a "sufficient connection" between the defendant and the threat and declined the recusal request. *Id.* at *4.

7

35.     In this case, just as in *Dalfonso* and *Salerno*, the conduct at issue is that of a third party, not the Debtor herself and there is nothing in the record by which a reasonable person would infer that this Court has attributed Andrew's conduct to the Debtor.

36.     There is no indication that the Debtor in any way caused Andrew to engage in the threatening behavior that led to his criminal proceedings or that she participated in the threats.

37.     The only connection that Debtor identifies between her and Andrew's conduct is that she is his spouse. However, *Dalfonso* and *Salerno* make clear that this connection alone is not enough for any appearance of bias as to Andrew to be attributed to the Debtor.

38.     Also, the threat was not made to or expressly directed at any particular judicial officer. The indictment against Andrew states that the threat was communicated to a Deputy United States Marshal and was made against "*unnamed* United States judges and *unnamed* Federal law enforcement officers." (Doc. 810-1 at 1) (emphasis added).

39.     The Motion *in Limine* filed by the Government in Andrew's case makes clear that Andrew's conduct was part of a broader, years-long pattern of threatening behavior by Andrew toward attorneys, judges, court staff, and others involved in the bankruptcy system. (Doc. 810-4 at 4-13).

40. The fact that Andrew has broadly engaged in threatening behavior for years against numerous parties makes it difficult for a reasonable person to conclude that Chief Judge Van Eck might be biased against the Debtor because of Andrew's latest actions.

41. Additionally, the Debtor has given no reason for her delay in seeking recusal despite Andrew's long pattern of threatening conduct which pre-dated the latest filing by the Debtor on the Rule 60(b) Motion.

42. Andrew was indicted on February 18, 2026. (Doc. 810-2 at 4). Yet, the Debtor waited three and a half months until she had filed her 60(b) Motion to seek recusal.

43. Debtor's delay in seeking recusal based upon Andrew's threats until after she filed her 60(b) Motion demonstrates a clear attempt to take advantage of Andrew's arrest by getting a new judge to hear her request to relitigate issues that were already resolved by this Court over a year ago.

44. The fact that U.S. District Judge Julia K. Munley recused herself from presiding over Andrew's criminal case is immaterial to this Court's disqualification analysis in the Debtor's case.

45. In Andrew's case, Andrew sought recusal of Judge Munley under both 28 U.S.C. § 455(a) and 28 U.S.C. § 455(b)(1), which requires disqualification when a judge has "personal knowledge of disputed evidentiary facts concerning the

proceeding." (*See* Doc. 810-5 at ¶ 12). Andrew pointed out that the Government intended to introduce evidence relating to Andrew's bankruptcy proceedings as part of his criminal case, and Judge Munley had presided over Andrew's appeal of this Court's Order dismissing his bankruptcy case. (*Id.* at ¶¶ 16-17). Based upon these facts, Andrew argued that Judge Munley should recuse herself under 28 U.S.C. § 455(b)(1) given her knowledge of "evidentiary facts" relating to the case.

46.     Andrew also sought disqualification of all of the judges in the Middle District of Pennsylvania because they were all made aware of the United States Marshals Service investigation into Andrew and they had "email exchanges and telephone conversations" with Supervisory Deputy United States Marshal Hartman concerning Andrew. (*Id.* at ¶¶ 20-21).

47.     Judge Munley disqualified herself but, notably, denied the request to disqualify the rest of the judges of the Middle District of Pennsylvania. (Doc. 810-6).

48.     Here, unlike in Andrew's case, there is no allegation that this Court has "personal knowledge of evidentiary facts" that might create an appearance of bias or could lead a third party to reasonably question the Court's impartiality. Rather, the Debtor's Disqualification Motion is based only on the fact that her *husband* is accused of making threats against judges and law enforcement personnel.

49. Further, recusal in this case would require a new judge to learn the lengthy history of the Debtor's case and all of the prior filings relating to this matter.

50. Given that there have been over 810 filings thus far in the Debtor's case, and multiple rulings on the same or related issues to the ones presented to this Court in the Debtor's 60(b) Motion, granting recusal would seriously undermine the interests of judicial economy.

51. This is particularly true where the Debtor's 60(b) Motion is not only substantively non-meritorious as set forth in greater detail in the Trustee's Objection to the Motion, (Doc. 808), but is also facially untimely under Local Bankruptcy Rules 9023-1 and 9024-1.

52. Additionally, to the extent that the Debtor seeks disqualification of judges other than Chief Judge Van Eck, the Debtor's request is procedurally improper as 28 U.S.C. § 455(a) addresses only a judge's obligation to disqualify himself and does not, by its terms, authorize disqualification of other judges. *See* 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify *himself* in any proceeding in which *his impartiality* might reasonably be questioned.") (emphasis added).

53. For all of these reasons, the Trust respectfully requests that this Court deny the Debtor's Disqualification Motion.

**WHEREFORE**, the Andrew V. Papoutsis Irrevocable Trust respectfully requests that this Court deny the Debtor's Motion to Disqualify United States Bankruptcy Court Judges for the Middle District of Pennsylvania (Doc. 810).

Respectfully submitted:

CUNNINGHAM, CHERNICOFF
& WARSHAWSKY, P.C.

By:_____
    Robert E. Chernicoff, Esquire
    Attorney I.D. No. 23380
    Joseph M. Kanfer, Esquire
    Attorney I.D. No. 306558
    2320 North Second Street
    P. O. Box 60457
    Harrisburg, PA 17106-0457
    (717) 238-6570

Date: June 17, 2026